GERTRUDE E. HOPKINS, pro ami, in equity,

*vs.*

JAMES KEAZER, and others.

Cumberland.     Opinion November 30, 1896.

*Will.     Fee.     Life-Estate.     Vested     and     Contingent     Remainders.     Trusts.*
*Insurance.     R. S., c. 74, § 16.*

A testatrix appointed her son James the executor of her will, to act without
giving bond, and made the following disposition of her estate:

"Second. During the lives of my son James Keazer, and his wife Mary Eliza-
beth Keazer, I give and bequeath to them one-half of the income of my store
and the land connected therewith, situated on the North Westerly side of
Middle Street, in said Portland, and now numbered 203. Said James and his
wife, so long as they, or the survivor, shall have and enjoy the income of
said one-half of the above described premises, shall be charged with and pay
one-half part of the repairs, insurance, taxes, and other legal expenses.
Upon the decease of the said James and the said Mary Elizabeth Keazer, I
give and bequeath the income of said one-half of said premises to my chil-
dren, or child then alive, charged with the payment of said taxes, insurance,
repairs and expenses: Said balance of said income of said one-half of said
premises is to be divided equally among my children, and upon the death of
all my children, I give and devise said one-half of said premises to my grand-
children then alive, said grandchildren receiving the share the parent would
have received if distribution thereof had been made under the laws of Maine."

"Third. I give and bequeath to my daughter Mary Helen Yeomans, the other
half of the income of said premises on said Middle street during her life,
charged with said half of the repairs, taxes, insurance and other legal
expenses; and upon the death of my said daughter Mary Helen, I give and
devise said one-half of said premises on Middle street to the child, or chil-
dren of my daughter Mary Helen Yeomans."

"Fourth. Inasmuch as my late daughter Mrs. Caroline Hopkins, received from
her father, property on Gray street, in Portland, I therefore give and bequeath
to my granddaughter, Gertrude Emma Hopkins, the sum of three hundred
dollars. This amount is to be invested by my executor, for the said Gertrude,
but shall not be paid to her until she shall become twenty-one (21) years of
age; when of that age this sum with its accumulations shall be paid to her.
Should my grandchild Gertrude die before that period, I give and bequeath
said sum with its accumulations to my children then alive."

"Fifth. I give and devise to my daughter Frances Eva Webb, now of said
Portland, during her life, the use and income of the brick dwelling-house with
the land connected therewith and being now numbered 81 on the Northeast

side of State street, and in which she now resides. My daughter is to pay all taxes, insurance, repairs, and other legal charges thereon. Upon the decease of my said daughter, Frances Eva Webb, I give and devise said premises to the children of said Frances Eva Webb, and to their survivors or the survivor. If either of said children should die leaving issue then alive, such issue shall have the parents' share, and if there is no such issue, said share or shares shall descend to the survivors or the survivor."

" Sixth. I give and bequeath to my daughter, Mrs. Emma S. McDuffie, now of Chicago, during her life, the use and income of the brick dwelling-house with the land belonging thereto, situated at the corner of Gray and State streets in said Portland, together with the use of all the household furniture of every description in said dwelling-house. My daughter, Emma S. McDuffie, is to pay all taxes, repairs, insurance, and other legal charges thereon. Upon the death of my daughter Emma, I give and devise said premises above mentioned with the said household furniture, to the children, or child of said Emma S. McDuffie."

" Seventh. It is my wish, and I therefore make this request of my grandchildren, that none of them who become seized and possessed of any of my estate, shall sell and convey such interest until he or she shall have owned and controlled said interest at least for ten years, unless from sickness, accident, or some unforseen circumstance he or she is obliged to dispose of the same."

" Eighth. After payment of taxes, repairs, insurance, and other legal charges from the income of the rest, residue, and remainder of my estate, I give and bequeath the balance of said income to my children, and to the survivors, and survivor of them, and when all my children are deceased, I give, devise and bequeath said rest, residue and remainder to my grandchildren, the same to be distributed in accordance with the laws of Maine."

Upon the question whether, under items two and eight, the children of the testatrix are entitled to an absolute fee in the estates described in those items,—in item two upon the termination of the prior estate, and in item eight, residuary clause, at the death of the testatrix,—disregarding in both instances the devise over to their children, her grandchildren : —

*Held ;* that the testatrix intended to give the enjoyment of her estate to her children so long as they might live, and to give the estate itself, subject to this first charge, absolutely to her grandchildren ; that instead of there being a clear intention, by these bequests, that her children are to take an absolute property, it is on the contrary clearly evident that she intended they should not have any such property ; her scheme being that the fee in all her estate should vest in her grandchildren ; *Also ;* that the real intention and the judicial intention are not inconsistent with each other.

*Held ;* that the children of the testatrix, not taking an estate in fee simple, are entitled to a life estate, the income of which is bequeathed to them.

*Held ;* that the grandchildren, under items two and eight, take a contingent and not a vested estate ;

*Also;* that they take their interests in their vested remainders, per stirpe, the child or children of each parent taking by representation what would have been such parent's share had the estate been inherited by the children instead of being given to the grandchildren.

*Held;* that the executor is appointed by the will trustee of the fund provided for Gertrude Emma Hopkins, and he may properly be regarded as an implied or quasi trustee of the estates vesting in the children of the testatrix until they see fit to go into possession of such estate themselves.

The life-tenant shall, at the risk of committing waste if neglected, insure for the benefit of the whole estate,—its principal or corpus,—so that in case of loss, the proceeds may be either expended in the way of repairs, or be preserved as a substitute for the property lost.

*Spear* v. *Fogg*, 87 Maine, 132, affirmed.

ON REPORT.

This was a bill of interpleader to determine the construction of the will of Caroline Keazer, of Portland, deceased, and was heard on bill and answers.

The bill sets forth the will, the material parts of which are stated in full in the opinion; and further alleges that the estate of the testatrix is sufficient to meet all the calls of the will, and that the property embraced in the residuary clause consists of real estate and rights and credits.

The following questions were submitted for decision :—

1.  Do the several specific devises of the income of real estate therein described convey a life estate in the property itself to the several devisees for life ?

2.  Does the devise, in item 2, of the income of one-half the store, to the children of testatrix, upon the decease of James and Elizabeth Keazer, convey to the children of testatrix who may then be alive, an absolute title to the property ? If not, what title does it convey?

3.  Does the devise of the income of the property embraced in the residuary clause (item 8) vest in the children of testatrix an absolute title to the property itself as joint tenants ? If not, what title does it vest in them ?

4.  Are the devises to the grandchildren of the store, in item 2, and the residuary property, in item 8, or either of them, invalid, for lack of any words limiting the estates immediately preceding ?

5. Does any grandchild now hold any estate or title in the residuary property which may be subject to inheritance or disposal by will or deed, and which will not be divested in case such grandchild does not survive all of the children of testatrix?

6. If the devise to the grandchildren in item 2, is valid, will the children or heirs of a grandchild now living, but who does not survive all the children of testatrix, take any interest in the store?

7. Is the distribution of the residuary property among the grandchildren to be per stirpe or per capite?

8. Is there any construction of the will which will prevent the children of the testatrix from making a valid present division of the residuary property between themselves and your orator? And also of the remainder in the store?

9. Are any trusts created by said will? If so, what? When do they terminate? What is the subsequent disposition of the estate?

*H. W. Gage* and *C. A. Strout, Geo. C. Hopkins,* with them, for plaintiff.

*J. W. Symonds, D. W. Snow* and *C. S. Cook,* for defendants.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, JJ. STROUT, J., having been of counsel did not sit.

PETERS, C. J. Caroline Keazer left at her decease a will, some of the provisions of which are deemed to be of such doubtful meaning and effect as to render it expedient to obtain a construction of them by the court. Omitting such parts of the will as can have no bearing on the questions presented for our consideration, the instrument reads as follows:

"*Second.* During the lives of my son James Keazer, and his wife Mary Elizabeth Keazer, I give and bequeath to them one-half of the income of my store and the land connected therewith, situated on the North Westerly side of Middle Street, in said Portland, and now numbered 203. Said James and his wife, so long as they, or the survivor shall have and enjoy the income of said one-half of the above described premises, shall be charged

with and pay one-half part of the repairs, insurance, taxes, and other legal expenses. Upon the decease of the said James and the said Mary Elizabeth Keazer, I give and bequeath the income of said one-half of said premises to my children, or child then alive, charged with the payment of said taxes, insurance, repairs and expenses: Said balance of said income of said one-half of said premises is to be divided equally among my children, and upon the death of all my children, I give and devise said one-half of said premises to my grandchildren then alive, said grandchildren receiving the share the parent would have received if distribution thereof had been made under the laws of Maine.

"*Third.* I give and bequeath to my daughter Mary Helen Yeomans, the other half of the income of said premises on said Middle street during her life, charged with said half of the repairs, taxes, insurance and other legal expenses; and upon the death of my said daughter Mary Helen, I give and devise said one-half of said premises on Middle street to the child, or children of my daughter Mary Helen Yeomans.

"*Fourth.* Inasmuch as my late daughter, Mrs. Caroline Hopkins, received from her father property on Gray street, in Portland, I therefore give and bequeath to my granddaughter, Gertrude Emma Hopkins, the sum of three hundred dollars. This amount is to be invested by my executor, for the said Gertrude, but shall not be paid to her until she shall become twenty-one (21) years of age ; when of that age this sum with its accumulations shall be paid to her. Should my grandchild Gertrude die before that period, I give and bequeath said sum with its accumulations to my children then alive.

"*Fifth.* I give and devise to my daughter Frances Eva Webb, now of said Portland, during her life, the use and income of the brick dwelling-house with the land connected therewith and being now numbered 81 on the Northeast side of State street, and in which she now resides. My daughter is to pay all taxes, insurance, repairs, and other legal charges thereon. Upon the decease of my said daughter, Frances Eva Webb, I give and devise said premises to the children of said Frances Eva Webb, and to their

survivors or the survivor. If either of said children should die leaving issue then alive, such issue shall have the parents' share, and if there is no such issue, said share or shares shall descend to the survivors or the survivor.

" *Sixth.* I give and bequeath to my daughter, Mrs. Emma S. McDuffie, now of Chicago, during her life, the use and income of the brick dwelling-house with the land belonging thereto, situated at the corner of Gray and State streets in said Portland, together with the use of all the household furniture of every description in said dwelling-house. My daughter, Emma S. McDuffie, is to pay all taxes, repairs, insurance, and other legal charges thereon. Upon the death of my daughter Emma, I give and devise said premises above mentioned with the said household furniture, to the children, or child of said Emma S. McDuffie.

" *Seventh.* It is my wish, and I therefore make this request of my grandchildren, that none of them who become seized and possessed of any of my estate, shall sell and convey such interest until he or she shall have owned and controlled said interest at least for ten years, unless from sickness, accident, or some unforeseen circumstance he or she is obliged to dispose of the same.

" *Eighth.* After payment of taxes, repairs, insurance, and other legal charges from the income of the rest, residue, and remainder of my estate, I give and bequeath the balance of said income to my children, and to the survivors, and survivor of them; and when all my children are deceased, I give, devise and bequeath said rest, residue and remainder to my grandchildren, the same to be distributed in accordance with the laws of Maine.

" *Ninth.* I appoint my son, James Keazer, executor of this my last will and testament, and I request the Judge of Probate to grant unto him letters testamentary without requiring of him bonds, or sureties."

Perhaps the most important question presented by the will is, whether, under items two and eight, the children of the testatrix are entitled to an absolute fee in the estates described in such items,—in item two upon the termination of the prior estate, and in item eight, residuary clause, at the death of the testatrix,—dis-

regarding in both instances the devise over to their children, her grandchildren. In this case it cannot be so much an inquiry as to what the testatrix desired and expected to be done as it is whether she has been able to effectuate her intention consistently with the rules of law; for surely it cannot be denied that her purpose may be visibly seen by either lawyer or layman throughout all the lines of her will, a purpose to give the enjoyment of her estate to her children so long as they might live, and to give the estate itself, subject to this first charge, absolutely to her grandchildren.

Of course, we must fully recognize the familiar principle, well established in this state, that if a testator first bequeaths property by absolute and unconditional terms, he cannot afterwards by a different provision in the same will, unless it be a full or partial revocation of the first provision, carve a remainder out of what he has already disposed of. But that doctrine should be applied carefully where it manifestly conflicts with the real intention of the testator, and some judges and jurists think that the doctrine has already gone too far in some cases.

But we are of opinion that such doctrine cannot be reasonably applied to the bequests in question here. None of our own cases go far enough in that direction to embrace this case. Take for example the devise construed in *Mitchell* v. *Morse*, 77 Maine, 423, as illustrative a case as any on the subject. There a husband, after devising the rest and residue of his estate to his wife, afterwards says: "But the remainder thereof at my wife's decease I give and devise to my children and their heirs." There a positive repugnancy existed, and also an implication that there might or might not be any property remaining at the death of the wife. So in *Jones* v. *Bacon*, 68 Maine, 34, a leading case often cited, where a testator devises his estate to his wife and then undertakes to direct what shall be done with any portion of it which she may leave at her decease. These were inconsistent and repugnant devises. The same may be said of *Ide* v. *Ide*, 5 Mass. 500, an early and leading case in Massachusetts, where Parsons, C. J., said: "Wherever it is the clear intention of the testator that the devisee shall have an absolute property in the real estate devised

[the principle had not then been extended to personal property], a limitation over must be void." Let it be noticed that it is a "clear" intention that is to be manifested and not a doubtful one.

Now the present case differs from the above cases which we have presented as illustrations of the principle invoked by some of the parties interested in the controversy here. So far from there being in the bequests under consideration any "clear intention" that the children of the testatrix are to take an absolute property in her estate, it is on the contrary clearly evident that she intended they should not have any such property, her scheme being that the fee in all her estate should finally vest to her grandchildren. The two provisions for children and grandchildren are contained in a single sentence, done in one breath, while the pen is not lifted from the paper in expressing them. The meaning and effect of the words, " and when all my children are dead I give said residue to my grandchildren," are the same as if reading, "until all my children are dead, and then I give said residue to my grandchildren." So sure was she in her own mind that her real estate would go eventually to her children's children that in the seventh item of her will she advises them about its management.

It is noticeable that no power of disposal is at any rate expressly granted in the bequests, and that the words bequest and devise are appropriately used according to her intention, making bequests to the first generation and devises to the second. Nor are words of inheritance annexed to her bequests. The fact that she bequeaths only income instead of estate, whatever construction we may feel constrained to give to the word income in another connection, goes a good way towards indicating intention, and also in establishing the legal effect of the language used, construing all the clauses of the will together. And of still greater consequence for the same purposes is the fact that she carefully bequeaths only a balance of income, such balance as may be created after deducting, from the entire income, the items of taxes, insurance and all legal expenses. Why should she interest herself in those details of the future management of a property which she had previously given

absolutely to her children; and, a fortiori, if she was aware that she had already disposed of the property in such way?

This interpretation is consistent with all the ordinary rules of construction applicable in such cases; such as that the intention of the testator shall prevail, to be ascertained from a consideration of all the provisions of the will taken together; that the predominating or controlling purpose of the testator shall have great weight in interpreting his will; that all the provisions of a will without exception shall be rendered effectual if possible to be done consistently with the rules of law; and that courts will change or mould the language of a will in order to give to it its intended effect.    See Schouler, Wills, § 477, and cases in notes.    We have already seen what slight modification of the phraseology of this devise, while at the same time preserving all its substance, would indisputably establish its meaning.    And why does not the rule of construction laid down in R. S. ch. 74, § 16, lead to the same result, the rule being that a devise of land conveys all the interest of the devisor therein, unless it appears by the will that he intended to convey a less estate therein?    We think on this point in the controversy that the real intention and the judicial intention are not inconsistent with each other.

The next important question arising upon the will is whether the children of the testatrix, not taking an estate in fee simple, are entitled to a life estate in the properties, the income of which is bequeathed to them.    Those who are opposing the proposition of a life-tenancy rely very much on the circumstance that only a "balance" of income is bequeathed after certain deductions are made from the earnings; the argument being that such a bequest has an effect totally different from one that might give the whole income of the estates.    We incline, however, to the belief that it would be a reasonable construction of the clause to say that, in effect, it is nothing more or less than a bequest of the net income of the property described, and our own cases have fully established the doctrine that a devise of the income or net income of an estate for one's life-time is a devise of the estate itself for such period.    *Andrews* v. *Boyd*, 5 Maine, 199.    In *Butterfield* v.

*Haskins*, 33 Maine, 392, essentially the same principle is enunciated. In *Earl* v. *Rowe*, 35 Maine, 414, it was held that a direction by a husband in his will that his wife "shall receive for her support the net profits" of his land was a devise of the land itself. In *Diament* v. *Lore*, 31 N. J. L. 220, a bequest of income for life was decided to be a devise for life of the land from which the income was to be derived and paid over to the beneficiary annually for his support and maintenance. There are a few opposing cases however, and in the cases of *Bowen* v. *Payton*, 14 R. I., 257, and *Craig* v. *Craig*, 3 Barb. Chan. R. 76, will be found a collection of many cases on the subject. In late cases the Supreme Court of the United States has decided that the taxation of net income derived from land is a taxation of the land. See *Sampson* v. *Randall*, 72 Maine, 109, on the general proposition that a bequest of income of land is a devise of the land, when there are not overruling words in the will establishing the contrary.

Another point to be settled is whether the grandchildren take under items two and eight a vested interest in those estates at the death of the testatrix, or whether the vesting of the title in them is to be postponed until the termination of the prior estates subsisting in the testator's children during their lives.

We are of opinion that the estates to go to the grandchildren must be considered as contingent and not vested. The provision in their behalf in item two must be held to be contingent by force of the late case of *Spear* v. *Fogg*, 87 Maine, 132. See, also, the citations in that case. The words of this bequest plainly indicate contingency. The testatrix provides for an equal division of income among her children, and upon the death of all her children she devises the same estate to such of her grandchildren as may then be alive. There cannot be a plainer proposition than that it is uncertain who, if any, among the grandchildren shall be survivors after all the children of the testatrix are deceased.

The language of the residuary clause differs from that of item two and might admit of more doubt in its construction were it not for the influence of the construction which is inevitably to be placed on item two, and furthermore but for the general intention

of the testatrix as manifested by the whole will.   It can hardly be possible that the testatrix intended different kinds of disposition by the two clauses of her will.   The whole scheme of her will opposes such an idea.   And, still, in item two, she gives to such of her grandchildren as may be alive at the decease of all her children, and in the residuary clause she devises to her grandchildren generally.   But we think she meant in the second case what she directly said in the first, that grandchildren then alive should be the takers.   Living grandchildren were intended.   "When all my children are deceased, I give, devise and bequeath to my grandchildren," are her words.   She had in mind such grandchildren as there would be at the decease of her children, and not at her own decease.   The idea of survivorship was entertained by her in the whole residuary clause, the estate going first to her children and the survivors and survivor of them, and then to the surviving grandchildren.

Still another inquiry is to be responded to, and that is whether the grandchildren take their interests in their vested remainders per stirpe or not.   We do not doubt that by the terms of the will they take per stirpe, the child or children of each parent taking by representation what would have been such parent's share had the estate been inherited by the children instead of being given to the grandchildren.

Finally, we are asked if any trusts are created by the will. Evidently the executor is appointed by the will a trustee of the fund provided for Gertrude Emma Hopkins, and he may properly be regarded as an implied or quasi trustee of the estates vesting in the children of the testatrix until they see fit to go into possession of such estates themselves.   It would perhaps have been a wise provision had a trustee been expressly appointed, inasmuch as among the numerous devisees questions may arise as to what repairs better be made, or how much insurance should be carried, or as to which of them should have possession of the moneyed assets, the residuary estate consisting, as the bill informs us, of real estate and rights and credits, and one responsible person

can undoubtedly manage such concerns more satisfactorily than many can.

There is a good deal of reason to believe that the testatrix supposed she had intrusted these affairs in the hands of her trusted executor, and for that reason it may be proper to require security from any of the devisees who may have the keeping of the personal assets; but that is not a question here at this time, and it can be determined at a later date upon an application to the court if controversy arises in relation to it.

It should be noticed by those interested that the carrying of insurance is made a charge upon the incomes of the several portions of the estate or upon the estate itself. This does not mean merely that a life-tenant shall or may procure an insurance on his own interest, leaving the remainder-man to insure his separate interest if he sees fit to do so. But it means that the life-tenant shall, at the risk of the consequences of committing waste if neglected, insure for the benefit of the whole property,—its principal or corpus,—so that in case of loss the proceeds may be either expended in the way of repairs or be preserved as a substitute for the property lost. See 2 Perry, Trusts, 4th ed. §§ 487, 553, and cases cited.

We have no doubt that these views as expressed by us substantially answer the interrogatories submitted for our opinion, and we think that there is such serious doubt as to the true construction of some of the provisions of the will as to entitle the complainant to payment of her disbursements in this proceeding, and also to entitle each side to reasonable counsel fees out of the personal assets of the estate.

*Bill sustained.*