## In Equity.

CORNELIUS DOHERTY AND GEORGE H. HAYES, Executors,

*vs.*

JOHN C. GRADY et als.

## Washington.    Opinion December 24, 1908.

*Descent and Distribution.    Wills.    Rules of Construction.    Presumptions.*
*"Legal Heirs."    Per Stirpes and Per Capita.*

In considering a will, the general rule is that the intent of the testator is to govern but it is the intention expressed in the will and not otherwise.

It is a familiar rule of construction that the words of a will must receive their usual, ordinary and popular signification, technical words excepted, unless there is something in the context or subject matter to indicate that the testator intended a different use of the terms employed.

The distinction made in cases in regard to the right of beneficiaries named in a will to take per stirpes or per capita, depends upon determining whether the phraseology of the will divides them into classes, in which the individuals of each class take equally, or establishes but one class all the members of which take equally.

According to the established rule of law, a devise to "heirs whether it be to one own's heirs, or to the heirs of a third person, designates not only the persons who are to take but also the manner and proportions in which they are to take; and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be, that they shall take as heirs would take by the rules of descent.

Such presumption, however, will be easily controlled, by any words in the will, indicating a different intention of the testator ; as if, after a devise to "heirs," it be added, "in equal shares," or "share and share alike," or "to them and each of them," or "equally to be divided," or any equivalent words, intimating an equal division then they will take per capita, each in his own right.    But when there are no such words, the presumption is that the testator referred to the familiar law of descents and distributions, to regulate the distributions of his bequest.

Where a testator in his will used the phrases, " to my legal heirs then living in equal shares," " to my legal heirs, in equal shares " and "in equal shares to my legal heirs," it was *held* that these phrases were undoubtedly calculated to convey precisely the same meaning and that the language used in the will designates but one class, his legal heirs, who take in equal shares according to his express directions.

The will of a testator contained the following clauses:

"7th, I hereby direct and authorize my executors or their successors to form a trust fund of the amount or amounts received from the sale of the said real estate, together with all the rest, residue and remainder of my personal estate after the above mentioned bequests shall have been made and deposit the same with the Morton Trust Company of New York City.

"8th, I bequeath to my wife Mary R. Grady, and hereby direct and authorize my executors to pay to her during her lifetime the interest on the sum of forty thousand dollars, and no more.

"9th, The interest on the balance of the fund I give and bequeath to my legal heirs, in equal shares, payable annually.

"10th, It is my will and request and I hereby authorize my executors and trustees, after the death of my wife, Mary R. Grady, to distribute the balance of the fund then in the hands and possession of the said Morton Trust Company, in equal shares to my legal heirs.

"11th, Should my wife, Mary R. Grady, die within twenty years from the date of my decease the fund is to remain on deposit with the said Morton Trust Company until after the expiration of that time when it is to be disposed of as provided in clause ten the interest to be divided amongst my legal heirs."

*Held:* 1. That the testator intended to make a specific bequest to his widow of the income on the sum of $40,000, which became vested immediately upon his death, but not payable until the expiration of a year from that date.

2. That it was the intention of the testator that his widow should receive from the date of his death until the trust fund was actually established a rate of interest upon $40,000 equivalent to that allowed by the Morton Trust Company.

3. That whenever the Morton Trust Company declares a dividend of interest on the trust fund, whether quarterly, semi-annually or annually, the widow will be entitled to receive her interest on the $40,000.

4. That in default of the payment of any installment of interest, the widow will be entitled to simple interest on the amount of such default from the time it becomes due and payable until it is paid.

5. That, according to clause ten of the will, the balance of the trust fund is to be divided per capita among the legal heirs of the testator.

6. That upon the happening of the contingency named in the 11th clause of the will, the interest on the trust fund until the expiration of twenty years should be divided equally among the legal heirs living at the time of the decease of the widow and payable to them in the same manner as it was paid to the widow in her lifetime.

7. That under clause 9 of the will, the interest is payable annually and is to be divided per capita among the legal heirs of the testator.

In equity. On report. Decree to be in accordance with opinion.

Bill in equity brought by the executors of the last will and testament of William O. Grady, deceased, against John C. Grady a brother of said deceased, Mary R. Grady widow of said deceased, Eliza P. Grady, a sister of said deceased, and several others interested in the estate of said deceased, asking for the construction of certain paragraphs of the will of said deceased. Answers were duly filed by all the defendants. When the cause came on for hearing on bill, answers and stipulations of counsel, it was agreed that the same should be reported to the Law Court for determination.

The case is stated in the opinion.

The will of said deceased is as follows :

"Be it Remembered, that I, William O. Grady of Eastport, in the County of Washington and State of Maine, being of sound mind and memory, but knowing the uncertainty of this life, do make this my last will and testament.

"After the payment of my just debts and funeral charges I bequeath and devise as follows :

"1st, I give and bequeath to my sister Eliza P. Grady, my horses and carriages.

"2nd, I give and bequeath to my wife, Mary R. Grady, all other articles of personal property domestic or household use or ornament belonging to me, which at my decease may be in my house at Eastport, Maine or in any other house which may be my principal place of residence.

"3rd, I give and bequeath to my brother, John C. Grady, the sum of five thousand dollars, to be paid to him in yearly payments of one thousand dollars each, for the term of five years.

"4th, I give, bequeath and devise to my wife, Mary R. Grady, all my interest in the homestead property at Eastport, Maine, during her lifetime and at her decease to my nephew, George O. Grady, during his lifetime and at his decease to his children, should he die without issue to my legal heirs then living in equal shares, as tennants in common, it being my express wish and desire that the

homestead property shall always remain in the possession of the Grady family. Should my wife, Mary R. Grady, not desire to occupy the homestead property as a residence it is my wish and desire that my sister Eliza P. Grady, shall so occupy it.

"5th, I give bequeath and devise to my nephew, John Weston Grady, all my interest in the three stories building and lot situated on Water Street in said Eastport, at the head of the wharf property, with the express understanding that my sister Eliza P. Grady, is to have the use of that portion of said building now used by her for office purposes, during her lifetime, free from rent.

"6th, I hereby direct, authorize and empower my executors or their successors to sell and convey all and any of the rest, residue and remainder of my real estate, for cash, either together or in parcels and for the best price obtainable and shall for the purpose aforesaid execute all such deeds, assurances and things, as they may think fit.

"7th, I hereby direct and authorize my executors or their successors to form a trust fund of the amount or amounts received from the sale of the said real estate, together with all the rest, residue and remainder of my personal estate after the above mentioned bequests shall have been made and deposit the same with the Morton Trust Company of New York City.

"8th, I bequeath to my wife, Mary R. Grady, and hereby direct and authorize my executors to pay to her during her lifetime the interest on the sum of forty thousand dollars, and no more.

"9th, The interest on the balance of the fund I give and bequeath to my legal heirs, in equal shares, payable annually.

"10th, It is my will and request and I hereby authorize my executors and trustees, after the death of my wife, Mary R. Grady, to distribute the balance of the fund then in the hands and possession of the said Morton Trust Company, in equal shares to my legal heirs.

"11th, Should my wife, Mary R. Grady, die within twenty years from the date of my decease the fund is to remain on deposit with the said Morton Trust Company until after the expiration of that

time when it is to be disposed of as provided in clause ten the interest to be divided amongst my legal heirs.

"12, I hereby appoint as executors and trustees of this my last will and testament Cornelius Doherity and George H. Hayes of Eastport, Maine.

"In testimony whereof, I hereunto set my hand, and in the presence of three witnesses declare this to be my last will, this seventeenth day of December in the year one thousand nine hundred and four.

"William O. Grady.    (seal)"

*L. D. Lamond,* for plaintiffs.

*C. B. & E. C. Donworth, and L. H. Newcomb,* for defendants.

Sitting : Emery, C. J., Whitehouse, Savage, Peabody, Spear, Bird, JJ.

Spear, J.    This is a bill in equity for the construction of certain paragraphs in the will of William O. Grady of Eastport, namely : 7th.    I hereby direct and authorize my executors or their successors to form a trust fund of the amount or amounts received from the sale of the said real estate, together with all the rest, residue and remainder of my personal estate after the above mentioned bequests shall have been made and deposit the same with the Morton Trust Company of New York City.

8th.    I bequeath to my wife, Mary R. Grady, and hereby direct and authorize my executors to pay to her during her lifetime the interest on the sum of forty thousand dollars, and no more.

9th.    The interest on the balance of the fund I give and bequeath to my legal heirs, in equal shares, payable annually.

10th.    It is my will and request and I hereby authorize my executors and trustees, after the death of my wife, Mary R. Grady, to distribute the balance of the fund then in the hands and possession of the said Morton Trust Company, in equal shares to my legal heirs.

11th. Should my wife, Mary R. Grady, die within twenty years from the date of my decease the fund is to remain on deposit with the said Morton Trust Company until after the expiration of that time when it is to be disposed of as provided in clause ten the interest to be divided amongst my legal heirs."

The case shows that executors of the will were duly appointed and qualified and that Mary R. Grady, widow, elected to take the pecuniary and other provisions made for her by the will in lieu of her distributive share in the estate and of her dower in the lands of her late husband.

The executors declare that they are in doubt with respect to the proper interpretation of the above clauses of the will and desire to submit certain questions to the judgment of the court relating thereto :

1st. Whether the interest on $40,000 given by the 8th clause of the said will to the said widow, Mary R. Grady by the said William O. Grady commences from the date of the death of the said William O. Grady or from the time of forming the trust fund with the Morton Trust Company of New York.

2nd. If the interest commences from the date of the death of the testator should the same be computed according to the rate of interest allowed by said Morton Trust Company or based upon the income which the estate has earned since the death of the testator until the trust fund was actually formed.

3rd. Whether in the final distribution of the estate according to clause ten in said will, the balance of the fund is to be divided into four equal parts, one fourth to John C. Grady, brother, one fourth to Eliza Grady, sister, one fourth to the four children of James B. Grady, deceased and one fourth to George O. Grady, only heir of George O. Grady deceased, or does the clause "in equal shares to my legal heirs" mean that the children of the deceased brothers are to share equally with the brother and sister now living.

The defendant, Mary R. Grady, also propounds the following questions : 1st. When is the interest payable that was bequeathed to the testator's widow, Mary R. Grady, by the 8th clause of the

will? If periodically, at what periods is it payable and how is the amount of each installment to be determined?

2nd. If there has been any default in payment of any such installment, does it bear interest and if so, from what date and at what rate?

The brother, sister and George O. Grady, nephew, likewise ask:

Should the contingency occur that is provided for by the 11th item of the will, what disposition is to be made of the interest on the trust funds from the time of the happening of said contingency to the termination of the twenty year term mentioned in said item.

The other questions appear to be duplicates of those referred to.

In answer to the first question it is the opinion of the court from the clear and unambiguous phraseology, that the testator intended by clause eight of the will to make a specific bequest to his widow of the income on the sum of $40,000, which became vested immediately upon his death, *Prescott* v. *Morse,* 62 Maine, 447, but not payable until the expiration of a year from that date, *Hamilton* v. *McQuillan et al.,* 82 Maine, 204.

In answer to the second question, the court is of the opinion that it was the intention of the testator that his widow should receive from the date of his death until the trust fund was actually established a rate of interest upon $40,000 equivalent to that allowed by the Morton Trust Company of New York City.

In this connection may be considered the first question put by Mary R. Grady in her answer in which she asks "if the interest is payable periodically, at what periods it is payable and how is the amount of each installment to be determined." In answer to this question the court is of the opinion that the testator intended that the beneficiary should receive her interest in accordance with the rule observed by the Morton Trust Company in the payment of interest upon trust funds of this character, that is, whenever the Morton Trust Company declared a dividend of interest upon this trust fund, the plaintiff would be entitled to receive it when so declared whether quarterly, semi-annually or annually.

Her second question also logically arises in this connection. It is the opinion of the court in answer to this question that in default

of the payment of any installment of interest, the beneficiary will be entitled to simple interest on the amount of such default from the time it becomes due and payable until it is paid; *Hamilton* v. *McQuillan et al.*, supra.   To avoid possible confusion it is proper to reiterate that the legatee's income would bear no interest for a year after the death of the testator as already suggested.

In answer to the third question of the executors, the court is of the opinion that, according to clause ten, the balance of the fund is to be divided per capita among the legal heirs of the testator. That is, the children of deceased brothers living at the time of the death of the testator, are to share equally with the brother and sister.

In considering a will, the general rule is that the intent of the testator is to govern but it is the intention expressed by the will and not otherwise.   *Cotton* v. *Smithwick*, 66 Maine, 367.   It is also a familiar rule of construction that the words of a will must receive their usual, ordinary and popular signification, technical words excepted, unless there is something in the context or subject matter to indicate that the testator intended a different use of the terms employed.   *Andrews* v. *Schoppe*, 84 Maine, 170 ; *Jacobs et al.* v. *Prescott et al.*, 102 Maine, 63.   These rules of construction are stated in various ways and have become so well settled as to now be considered elementary formulas for the construction of wills.  As said in *Hall* v. *Hall*, 27 N. H. 275, "the words used by the testator are the means we are to use to ascertain his intention."

Under these rules it becomes necessary to determine what the testator intended by the use of the language "to my legal heirs, in equal shares," which he employed to give expression to his will. It will be noticed by reference to the various clauses in the will that this form of expression is somewhat varied, reading in item 4, "to my legal heirs then living in equal shares ;" in item 9, "to my legal heirs in equal shares ;" in item 10, "in equal shares to my legal heirs."   These different expressions were undoubtedly calculated to convey precisely the same meaning.

The brother, sister and a nephew of the testator contend that the words "in equal shares" as used in his will should be given

no significance in the construction of the clauses where the phrase appears; that the will should be construed precisely as it would, if these words were omitted and the testator had designated his beneficiaries as his legal heirs only. If this contention is to be regarded, the law seems to be well settled that a bequest to heirs or legal heirs designates not only the persons who are to take but also the manner and proportion in which they take. Where no other words are found to control, the law presumes the intention of the testator to be that they shall take as heirs would by the rules of descent, that is per stirpes instead of per capita. But a careful consideration of every item of the will, disclosing the use of the phrase "in equal shares" three times, differing a little in form but not in meaning, seems to clearly indicate a purpose in the mind of the testator to give these words some effect. The repetition of this phrase shows that it was not used accidently but intentionally. If so used, the words must be presumed to convey their usual meaning in the connections in which they were used. *Daggett* v. *Slack et al.*, 8 Met. 450, is decisive of the question here involved. In the opinion Chief Justice Shaw says: "The question then is, whether these heirs shall take per capita or per stirpes. And the court are of opinion, that, according to the established rule of law, a devise to "heirs" whether it be to one's own heirs, or to the heirs of a third person, designates not only the persons who are to take but also the manner and proportions in which they are to take; and, that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be, that they shall take as heirs would take by the rules of descent. Therefore in the present case, where there are no such words, the true construction of the will is, that the grandchildren take per stirpes, and not per capita; and therefore that the petitioner is entitled to one eighty-eighth part only of the devised estate. 1 Roper on Leg. (1st Amer. ed.) 126; 2 Jarman on Wills, 46. Such presumption, however, will be easily controlled, by any words in the will, indicating a different intention of the testator; as if, after a devise to "heirs," it be added, "in equal shares," or "share and share alike," or "to them and each of

them," or "equally to be divided," or any equivalent words, intimating an equal division, then they will take per capita, each in his own right. But when there are no such words, the presumption is, that the testator referred to the familiar law of descents and distributions, to regulate the distribution of his bequest." In precise point is *Dukes* v. *Faulk*, 37 So. Carolina, 255, 34 Am. St. R. 745, *Mason's Exors.* v. *Trustees M. E. Church*, 27 N. J. Eq. 47.

The distinction made in these cases in regard to the right of beneficiaries named in a will to take per stirpes or per capita, depends upon determining whether the phraseology of the will divides them into classes, in which the individuals of each class take equally, or establishes but one class all the members of which take equally. The language of the will before us designates but one class, his legal heirs, who take in equal shares according to his express directions.

In answer to the last question relating to the 11th item of the will, the court are of the opinion that upon the happening of the contingency therein named, the interest on the trust fund until the expiration of twenty years should be divided equally among the legal heirs living at the time of the decease of Mary R. Grady and payable to them in the same manner as it was paid to Mary R. Grady in her lifetime.

While item 11, provides for distribution of interest "amongst my legal heirs," leaving off the phrase "in equal shares," we are yet inclined to the belief that he intended the division to be made, in accordance with the general design observed in the rest of his will for the disposition of his property. It seems improbable that he made this contingent division of interest an exception to the rule.

In the answers of John Weston Grady et als., the question is asked "In what proportion are the respective heirs to take under the 9th and 10th items of said will." The answer already given with respect to the interpretation of item 10, is applicable to item 9 of the will, so far as the proportions which the heirs are to take are concerned, and the interest is payable annually as the will provides.

*Bill sustained. One bill of costs to be allowed the plaintiffs and one bill of costs to be allowed the defendants, and reasonable counsel fees for one attorney for the plaintiffs and reasonable counsel fees for one attorney for the defendants to be paid from the estate and allowed to the executors in their account.*

*Decree in accordance with this opinion.*