SARAH G. CROSBY, et als.    In Equity

*vs.*

ALICE M. CORNFORTH, et al.

Somerset.    Opinion July 1, 1914.

*Bill in Equity.   Construction.   Gift.   Intention.   Interpretation.   Personal Property.   Residue and Remainder.   Tangible.   Will.*

1.  The words "personal property" are susceptible of two meanings; one, the broader, including anything which is the subject of ownership, except lands and interest in lands; the other, more restricted, oftentimes embracing goods and chattels only.

2.  The intention of the testator is the fundamental canon of interpretation in the construction of wills.

3.  The intention of the testator is to be gathered, not only from the words of the particular devise, but from the whole will, from the relation of the testator to those who are the objects of his bounty, and from all the circumstances surrounding the testator.

4.  When certain things are enumerated and a more general description is coupled with the enumeration, that description is commonly understood to cover only things of like kind with those enumerated, upon the presumption that the testator had only things of that kind in mind.

5.  Testatrix, to carry out a provision in the will of her deceased husband, whereby he gave her his estate for life with power to dispose of the same by will to a charity, gave by will a specified sum to a charity.   She subsequently made an additional will wherein she directed her executrix to give specific tangible

articles to various legatees named, and gave the remainder of her "personal property" to the executrix to be kept for herself and given to others as she saw fit.    The heirs of testatrix were first cousins, and the executrix and her husband second cousins, and the executrix was a niece of the deceased husband.  The executrix had an insane sister dependent on her for support, and for more than a year testatrix had been living in the family of the executrix and her husband. There was some evidence that testatrix disliked some of her heirs.    *Held*, that the gift of the remainder of the personal property included rights and credits and was not limited to tangible personal property.

On report.    Decree in accordance with the opinion.

In this bill in equity, the plaintiffs ask the court to construe and interpret the provisions of the will of Semantha C. Jerrard and to particularly determine whether the clause and paragraph of said will, as set forth, in paragraph three of the bill, disposes of all or any of the rights and credits of the estate.    Answers were filed by both defendants.    At the conclusion of the evidence, the Justice hearing the case, being of the opinion that questions of law were involved of sufficient importance or doubt to justify the same, and the parties agreeing thereto, the case was reported to the Law Court, upon so much of the foregoing evidence as is legally admissible, for final determination.

The case is stated in the opinion.

*Merrill & Merrill*, for plaintiffs.

*Manson & Coolidge*, for defendants.

SITTING:  SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, JJ.

SAVAGE, C. J.    This bill in equity is brought to obtain a construction of the will of Semantha C. Jerrard.    The plaintiffs were next of kin of the testatrix, and the defendants are the executors.    Alice M. Cornforth is also a legatee.

Mrs. Jerrard's husband, Simon G. Jerrard, died in 1909, testate. By the ninth paragraph of his will, he devised and bequeathed the residuary estate in the following manner:    "All the rest, residue and remainder of the property of whatever name or kind of which I may die possessed, together with the use and proceeds during her lifetime of all property embraced in the foregoing bequests, I hereby give, devise and bequeath to my beloved wife Semantha C. Jerrard, for her sole and separate use for and during her natural life, with full power to use, dispose of, sell and convey any or all of it as she may desire,

the same as I might do if living, and to dispose of by will, at her discretion, as a memorial fund in her own name and mine, to be devoted to some charitable, benevolent or educational use, a sum not exceeding three-fourths part of what may remain of my estate at her decease. And I earnestly desire that my said wife during her lifetime shall dispose of by gift to such of my relatives as are not specially named in this instrument all my household goods, pictures, silver, glass and crockery ware and all other articles which go to make up the furnishings of our home, so that none of said furnishings shall ever be disposed by sale." The remainder over he bequeathed to certain relatives.

To carry out the foregoing provision for a memorial fund, Mrs. Jerrard on August 16, 1911 made a will by which she gave $4000 to the Home for Aged Women at Bangor, Maine, "to be paid from the property described in said ninth paragraph of the will of Simon G. Jerrard and is disposed of by authority of that paragraph." She named the defendant Libby as executor.

On October 25, following, she made an additional will, in which she recited that "having already under such circumstances made a gift of all the articles named in this will, some of which are at hand and capable of manual delivery such as I have made, and some of which are at a distance and capable of delivery by keys and other instrumentalities, all of which I have done to the best of my ability, do hereby make this will to confirm and make good these gifts if it be at all necessary." She appointed the defendant, Alice M. Cornforth, as executor of this will, and confirmed the will of August 16, 1911. She then in paragraph 2, directed Mrs. Cornforth to give certain specific articles to various legatees named. Among these bequests are only two which need be specifically referred to, namely, "everything tangible, not including money and choses in action, in my room and the two adjoining clothes presses at Pittsfield to Alice M. Cornforth for herself;" and a quilt and "the large marble topped table at Levant to Alice M. Cornforth for her own use."

The third and last, but unnumbered paragraph, reads as follows:

"All the remainder of my personal property, I hereby give, devise and bequeath to Alice M. Cornforth to be kept for herself and given to others as and how she sees fit."

The executors returned an inventory showing goods and chattels appraised at $118.50; rights and credits appraised at $6696.46; and

real estate appraised at $1000. It appears that the greater part of the rights and credits are claimed by the administrator de bonis non of the estate of Simon G. Jerrard, as remainder over after the termination of Mrs. Jerrard's life estate.

' This controversy has arisen over the interpretation of the words "personal property" in the last paragraph of Mrs. Jerrard's will. Mrs. Cornforth contends that the words include the rights and credits as well as the goods and chattels or articles, while the plaintiffs claim that "personal property" in this will means only the articles, or goods of which Mrs. Jerrard died possessed, and that the rights and credits, not having been bequeathed, are intestate estate, and will go ultimately to the heirs.

And it should be noted at the outset that we are not now concerned with the controversy between these executors and the administrators of Mr. Jerrard's estate touching the question what part, if any, of the rights and credits belongs to the latter estate. The construction which we shall give to Mrs. Jerrard's will will affect only so much of the property as belongs to her estate.

In support of their contention that the words "personal property" in this will should be so construed as to exclude "rights and credits, the plaintiffs rely very strongly upon *Andrews* v. *Schoppe*, 84 Maine, 170. The court has had occasion often to remark, as was remarked in effect in *Andrews* v. *Schoppe*, that decisions of the courts interpreting other wills somewhat differently phrased, or surrounded by different conditions, are very unsafe and uncertain guides. Slight changes in phraseology may very seriously differentiate the meaning. Similar, but not wholly alike phrases, are quite likely to mislead.

It is true that in *Andrews* v. *Schoppe*, the court pointed out that the words "personal property" were susceptible of two meanings: one, the broader, including everything which is the subject of ownership, except lands, and interest in lands; the other, more restricted, oftentimes embracing goods and chattels only. And it was suggested that it is in this sense that the expression is ordinarily and popularly used.

But granting this, the question in each case is, what did the testator mean? For that is the fundamental canon of interpretation in the construction of all wills. The intention of the testator is the goal which the court seeks to reach. "That intention is to be gathered not only from the words of the particular devise, but from

the whole will, from the relations of the testator to those who are the object of his bounty, and from all the circumstances surrounding the testator." *Andrews* v. *Schoppe,* supra.

· And we may as well say here, that in *Andrews* v. *Schoppe,* the court found strong internal evidence that the testator intended by the words "personal property" to include only goods and chattels. And that case is distinguishable from this one in several respects, as is pointed out by the learned counsel for the defendants in this case. In that case, the words were "all other articles of personal property in the house." The words "personal property" were limited by "articles," and by "in the house." Again the words follow certain enumerated articles in the same sentence. Then in the next clause money was given to the same legatee. And finally there was in another paragraph a residuary clause.

We are now to inquire what Mrs. Jerrard's intention was. Aside from the language of the will, it is proper to consider the circumstances which surrounded her at the time she made the will, and her relations with the heirs and the legatees. The heirs were cousins. Both Mrs. Cornforth and her husband were second cousins, and Mrs. Cornforth was a niece of Mr. Jerrard. Mrs. Cornforth had an insane sister dependent upon her for support. For more than a year Mrs. Jerrard had been living in the family of Mr. and Mrs. Cornforth, for whom she apparently entertained the kindliest of feelings. She had previously given Mr. Cornforth $500, and on the day the will was made, she gave Mrs. Cornforth a $500 note and mortgage which she held. There is some evidence that she disliked some of her heirs, and that at the best her relations with them were not intimate. So much for the circumstances.

The plaintiffs contend that the will on the face of it shows that the testatrix intended merely to confirm gifts already made, and that, as there is no evidence of gifts of money and choses in action made to Mrs. Cornforth, it should be concluded that there were no such gifts, and therefore that no such gifts were confirmed by the residuary clause, and this clause was not intended to include money and choses in action, property which had not previously been given away.

Again, the plaintiffs contend that the residuary paragraph, which is unnumbered, should be treated as if it were the concluding part of paragraph 2, that when the testatrix, after having bequeathed a number of specific articles of furniture and personal belongings to

various individuals, said in substance, "I give the remainder of my personal property," it should be interpreted as meaning "the remainder of my goods and chattels, such as I have already bequeathed." And they rely upon the familiar rule, that where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things of like kind with those enumerated, upon the presumption that the testator had only things of that kind in mind. *Andrews* v. *Schoppe*, supra.

Finally, the plaintiffs ask, why, if the testatrix intended the money and choses in action to pass to Mrs. Cornforth as personal property in the residuary clause, did she exclude them in the legacy to her in the second paragraph? They earnestly insist that the exclusion in paragraph 2 is clear evidence of an intention not to give them to Mrs. Cornforth.

We find ourselves unable to agree with any of these contentions. We think they are not tenable. We will not discuss them in detail, except as we state our interpretation of the will and the reasons for it. The words "personal property" in a will must be given their full legal effect, unless limited by some other part of the will, or unless, read in the light of surrounding circumstances, it appears that such was not the intention of the testator. *Brown* v. *Coggswell*, 5 All., 556. And in law, "personal property" includes all property rights and estates, except real estate, and interests therein.

Were it not for the exclusion of money and choses in action from Mrs. Cornforth in the second paragraph, we think it would be perfectly clear that they passed to her by the residuary clause. Nothing in the will indicates a contrary intention. What was the reason for that exclusion?

We think the answer is this. Mrs. Jerrard's husband in his will had earnestly desired her to give away to his relatives the household goods and furnishing, so that they never should be sold. She attempted to carry out his wish, but seems to have had fears that some of the gifts were not complete for want of delivery. This difficulty she sought to remedy by her will. And it seems clear to us that paragraph 2 of the will was devoted to that remedy. The scrivener of the will testifies that he has no doubt that he had a list from which to make the draft of the will. The testatrix by the will directed the executrix to give the various articles to the legatees

named, to give "the star quilt that belonged to Aunt Rhoda" and "the large marble topped table at Levant" to herself "for her own use;" likewise "everything tangible, not including money and choses in action, in my room and the two adjoining clothes presses," to herself "for herself." The articles given were grouped together as the gifts she had made in pursuance to her husband's will, that they might not be sold. The money and choses in action had not been given away and did not belong to this group. They were therefore excepted from "everything tangible" in the room. Moreover, the expressions, "for her own use" and "for herself" when compared with the expression in the residuary clause, "to be kept for herself and given to others as and how she sees fit," indicate, we think, that the testatrix had in mind her husband's desire that those articles should not be sold, and expressed her wish, imperfectly perhaps, that they should be regarded by the recipients as family treasures, and so kept and used by them.

Lastly, after having directed her executrix to give certain articles in confirmation of her own gifts of the same articles, she changes the expression and says, as to the remainder of the personal property, "I hereby give, devise and bequeath" it to Alice M. Cornforth. She uses the technical, formal phrase. She now makes disposition of property not previously given away. She does so by a distinct testamentary clause. She makes no limitation except that it is personal property, and *all* her personal property. As to this property, there is no wished for limitation in use. It is to be kept or given to others as the legatee thinks fit.

Accordingly, we answer the questions propounded by the bill as follows: Semantha C. Jerrard did not die intestate, as to the items of rights and credits named in the inventory of her estate, and contained in Exhibit D. attached to the bill. All the rights and credits named in said inventory, or so much thereof as belonged to Mrs. Jerrard at her death, subject to charges and contingencies of administration, passed to Mrs. Cornforth by the residuary clause in the will.

The reasonable costs, expenses and fees incurred by the parties in this litigation, may be allowed by the Judge of Probate, and paid out of the estate.

*Decree in accordance with the opinion.*