CHASE MELLEN, JR., ET AL., TRUSTEES
*vs.*
CHASE MELLEN, JR., ET AL.

Kennebec.  Opinion July 29, 1952.

*Sanborn & Sanborn,* for Plaintiff.

*Verrill, Dana, Walker, Philbrick & Whitehouse & Woodbridge,* for Defendants.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, JJ.
(THAXTER J. and WILLIAMSON J. did not sit.)

MURCHIE, C. J. This process was instituted by Chase Mellen, Jr. and George Woodbridge, two of eight grandchildren of Joseph H. Manley, late of Augusta, who died February 7th, 1905. They are the Successor Trustees under his will, executed June 17th, 1902, and are seeking a construction of its Eleventh Paragraph, which must control the disposition of the corpus of a trust created therein and terminated by the death of Sydney S. M. Breck, the last survivor of his four children, on March 18th, 1951. The proceeding was commenced on August 2nd thereafter.

The eight grandchildren are the respondents. They take the entire estate. The issue, an entirely friendly one, as is demonstrated by the fact that all accepted service and joined in the prayer for construction, is whether they are to divide it *per capita* or *per stirpes*. Three are children of Lucy M. Mellen, two of Harriet M. Woodbridge, and three of Sydney S. M. Breck. The two are prosecuting this appeal, which is from a decree ordering a *per capita* distribution. The Justice who entered it filed "Findings" recording his "opinion" that that was what the testator "intended." This represents his construction of the will. A *per capita* division means an eighth for each grandchild. A *stirpital* one would give the two appellants each a sixth and each of the others a ninth.

The case was decided on the Bill and Answers. No facts are in dispute. The making of the will, the deaths of the testator and the last surviving child, the relationships, and all essential probate proceedings were duly alleged and admitted. A copy of the will was attached to the Bill. It represents all the evidence in the case. There was no oral testimony. All the language of the will susceptible of indicating the testamentary intention found by the single Justice, or that for which the appellants contend, is carried in Para-

graphs Seventh to Eleventh inclusive, which read as follows:

"Seventh:—All the rest and residue of my estate, both real and personal and wherever situated, and including all sums which may be received from life insurance policies and benefit certificates, I give, devise and bequeath to my son, Samuel Cony Manley of said Augusta, in trust, nevertheless, for the following purposes, viz: To invest and reinvest said rest and residue in such manner as shall be for the interest of my estate, and to divide the net income equally among as many of my children, Samuel Cony Manley, Lucy M. Mellen, Harriet Manley and Sydney S. Manley, as may at the time be living, and the children of a deceased child or children by right of representation.

Eighth:—In case my said son, Samuel Cony Manley shall marry and shall die without issue leaving a widow, I direct that such widow shall receive during her widowhood the income from the share of my estate from which my said son would receive the income if living.

Ninth:—I express the desire that the Cony homestead, situate on Stone Street, in said Augusta, shall be kept for the personal occupation of my children so long as it can be done without detriment to the interest of my said children.

Tenth:—If at the time of the death of all my children but one, there shall be living no grandchild, nor issue of a grandchild, I direct that the trust created by the seventh item of this my Last Will shall terminate, and that all said estate shall then vest in such one surviving child subject only to the payment of income to a widow of my said son as provided by the eighth item of this my Last Will.

Eleventh:—Upon the death of all my children I direct that the trust created by the seventh item of this my Last Will shall terminate, and that all

said estate shall then vest in my grandchildren subject only to the payment of income to a widow of my said son as provided by the eighth item of this my Last Will."

Reference to the allegations of the process shows that the family of the testator, which consisted of four children and two grandchildren at the time of the execution of the will, was increased thereafter by the birth of six additional grandchildren. The testator's fundamental plan, undoubtedly, was that his estate should be held intact so long as any of his children survived; that the income yielded by it should be divided among his children to provide support for them during their lives; and that, when such purpose had been accomplished, the principal would be divided among his grandchildren. It is clear that he intended each child to have a proportionate share of the income, for life, and no more, and to take no part of the principal except in the contingency stated in the Tenth Paragraph. The share of the income payable to any one child was not to be increased by the death of another, unless that other died without issue, and not then if the death was that of the son and he should leave a widow. The distribution of income was to be *stirpital*. It was controlled by the word "equally," which assured each child a proportionate share, and the express recital that when a child died leaving issue, his or her children should have the share of the parent "by right of representation."

The testator made it plain, also, that there were to be no vested interests in the principal of his estate so long as the trust continued. Alternative provisions for its termination were carried in Paragraphs Tenth and Eleventh, but in each the declaration was explicit that the estate should "then vest," either in the last surviving child, if there were no grandchildren, or the issue of any, under the Tenth, or in the grandchildren, if there were, under the Eleventh.

The opposing claims were ably presented, within the fundamental rule of testamentary construction always recognized in this Court, that the intention of a testator, if ascertainable from his will, considered as a whole, shall be given effect. *Hopkins* v. *Keazer,* 89 Me. 347, 36 A. 615; *Giddings* v. *Gillingham,* 108 Me. 512, 81 A. 951; *Bryant* v. *Plummer,* 111 Me. 511, 90 A. 171; *Tucker* v. *Nugent,* 117 Me. 10, 102 A. 307; *Merrill Trust Co.* v. *Perkins,* 142 Me. 363, 53 A. 2d. 260; and *Dow* v. *Bailey,* 146 Me. 45, 77 A. 2d. 567. It is urged for the appellees that the construction declared by the single Justice gives effect to the basic design of the will, and is in accord with presumptions applicable to all cases where there is a gift to a class, particularly one the members of which bear identical relationship to the testator. They urge also that the findings of a single Justice should not be disturbed unless obviously wrong, citing *Young* v. *Witham,* 75 Me. 536, and cases decided on its authority. As against this, the appellants insist that the will discloses a *stirpital* intention relative to the principal as plainly implicit as that clearly expressed for the income, and that the case should not be viewed:

> "as a battle between technically caparisoned 'presumptions.' "

Before proceeding to the merits of the case, it seems necessary to dispose of the claim of the appellees, that the principle declared in *Young* v. *Witham, supra,* is applicable to a "finding" of testamentary intention. The claim has no merit in a case which involves no oral testimony. The principle rests upon the particular foundation stated by Chief Justice Peters, when he said:

> "Cases are * heard before a single judge mostly upon oral evidence. When the testimony is conflicting, the judge has an opportunity to form an opinion of the credibility of witnesses, not afforded to the full court. Often there are things passing before the eye of a trial judge that are not capable

> of being preserved in the record. A witness may appear badly upon the stand and well in the record."

It seems desirable, also, to declare at the outset that the intention which must control the distribution of this estate must be determined from the will alone, and that decided cases in this jurisdiction, or elsewhere, cannot contribute to its determination. We make this statement because counsel for both appellants and appellees have cited us to numerous decisions of this Court and others. Most of them are discussed or analyzed to some extent in four annotations in A.L.R. 16 A.L.R. 15; 31 A.L.R. 799; 78 A.L.R. 1385; and 126 A.L.R. 157. In the first the writer of the text asserts, in effect, that there is a general presumption that beneficiaries in a will whose shares are not specified therein shall take *per capita.* He expresses the view that the authorities are not in such "hopeless confusion" on the question as is often said, but that there is a degree of confusion does not admit of doubt. Comment upon it is found in such decisions of this Court as *Fogler* v. *Titcomb,* 92 Me. 184, 42 A. 360; *Crosby* v. *Cornforth,* 112 Me. 109, 90 A. 981; *Tibbetts* v. *Curtis,* 116 Me. 336, 101 A. 1023; *Perry* v. *Leslie,* 124 Me. 93, 126 A. 340. In the last of these Justice Morrill declared that it would be both unsafe and unjust to interpret the will of one man by the:

> "dubious light of the construction given by a court of justice to the will of another,"

adding that the remark was:

> "peculiarly applicable * to the consideration of a will involving the distribution of an estate per stirpes or per capita, upon which subject the cases are a multitude, confusing when an attempt is made to classify them, and in many cases contradictory."

We see no reason for referring to any of the cases cited from other jurisdictions except *Stoutenburgh* v. *Moore,* 37 N. J. Eq. 63, to which we refer because its comment that:

> " 'If it is doubtful whether he intended the distribution among his grandchildren to be per stirpes or per capita, the court should adopt a construction in favor of the former method, not only as being most probably in accordance with his intention, but also as being in accordance with the policy of the law,' "

was quoted with approval in the relatively recent case *Central Hanover Bank & Trust Co.* v. *Helme,* 121 N. J. Eq. 406, 190 A. 53. It should be noted, however, that New Jersey, according to the writer of the text in 16 A.L.R., is one of seven states having a notable inclination:

> "toward stirpital distribution wherever possible."

The decisions of this Court cited therein demonstrate that each case is decided on its particular facts and that there is no clear tendency or inclination to prefer either construction to the other. Particular words such as "equally" or "share and share alike" obviously call for a *per capita* distribution, but references to the "laws" of descent, *Hopkins* v. *Keazer, supra, Fairbanks' Appeal,* 104 Me. 333, 71 A. 933, or the identification of beneficiaries by such a word as "heirs," *Tucker* v. *Nugent, supra, Doherty* v. *Grady,* 105 Me. 36, 72 A. 869, have been held to indicate intention for a *stirpital* one. In *Tucker* v. *Nugent, supra,* different paragraphs called for property (1) to be divided "equally between" the heirs of the testatrix and her husband, and (2) to pass to the legal heirs of both, "share and share alike." It was held that the use of the word "between" indicated an equal division for the two groups of heirs, collectively, and that those in each group should divide the half coming to them on a *stirpital* basis.

The only guides to intention available in the will of this testator are the word "equally" and the phrase "by right of

representation" in the Seventh Paragraph, and the absence of both from the Eleventh, unless the absence of express provision for handling the payment of income to a widow of the son (if he had left one still in widowhood) furnishes an additional one. We believe it does. Her existence, and survival, were not to be permitted to delay the vesting of the estate, in a single individual if the trust terminated under Paragraph Tenth, or in a group under Paragraph Eleventh. In the former case the fact that it vested "subject * to the payment" of income measurable on a fractional basis would provide no complication, nor would it under Paragraph Eleventh if the share which vested in each member of the group did so "subject" to an identical charge.

We consider it improbable that a testator who took the great care the will discloses to indicate that his equal division of the income of his estate among his children was intended to provide for grandchildren after the death of a parent would have failed, if such had been his intention, to indicate that when their vesting-time came, they were to take as from their parents subject to variable charges which would collectively aggregate what was to be paid to a widow of the son.

The will gave each grandchild living when it was executed a legacy of one thousand dollars (Paragraph Fourth). It gave each child an equal share of the income, and provided carefully that no one of them should ever take more than a fourth interest therein unless a brother or a sister died leaving no issue. It maintained the equality of the shares of the children by transferring that of each and every one of them to his or her issue on his or her death. The use of the phrase "by right of representation" was essential to accomplish that purpose. We find nothing to indicate that he intended inequality when the first phase of his plan came to an end and the second and final one was at hand. He would have declared that his grandchildren should take from him un-

der their parents if he had so intended. He did provide that they should take from him directly, as a class. In the absence of express provision for a *stirpital* division, it is inevitable, as we see it, that his will must be construed as it was construed in the decree entered by the single Justice.

It is apparent, however, that the Trustees should have submitted the question as they did to judicial determination, and it was both natural and proper for the appellants to pursue the matter to this final determination. The proper cost of the proceedings, therefore, including the reasonable fees and expenses of counsel, should be a charge against the estate, and may be provided either in a new decree or in probate accounting. The case is remanded for the entry of a decree making appropriate provision therefor.

*Appeal dismissed.*