# REID v. DODGE.

WILLS; TRUSTS AND TRUSTEES; INCOME ON LEGACIES.

1. Under a bequest to trustees of a specific sum, the same to be invested
   and the income used for the support and education of the testator's
   grandson until he attains the age of twenty-five years, at which time
   they are to pay the principal to him, if in their judgment it is
   safe and desirable to do so, and, if not, to continue to pay the
   income to him for life, or until they shall deem it proper to pay
   it to him, the grandson takes a life interest in the income, and
   is entitled to the income, or its equitable equivalent, from the date
   of the death of the testator; especially where it appears that he was
   about nineteen years of age when the will was made and about
   twenty years of age when the testator died, and that there are
   interest-bearing securities belonging to the estate yielding sufficient
   income to enable the trustees to pay to the plaintiff an equitable
   income upon the bequest at the end of the first year.  (Citing
   *McLane* v. *Cropper*, 5 App. D. C. 276.)

2. When a legatee is entitled to the income on his legacy from the date
   of the death of the testator, it is no obstacle that the precise in-
   come to which he may be entitled is not ascertainable during the
   first year after the testator's death, but in lieu of a specific in-
   come he may be allowed a sum equitably representing it.

3. Where one is given by a will the income upon a certain sum for life,
   although the sum is to be invested by the trustees under the will,

and may not be invested until a year or more after the testator's death, the legatee is still entitled to the income from the testator's death.

4. In a case where it was determined that the legatee was entitled to a life interest in the income from a fund bequeathed to trustees, it was *held* that, in view of the condition of the estate, the legatee was equitably entitled to interest at the rate of 5 per cent per annum upon the fund during the first year after the death of the testator.

5. Where trustees under a will tendered to the legatee a payment on account of income from a legacy, requiring that he accept it in full for all claims for income to date, and he refused to accept it because it did not include income during the year following testator's death, and he was compelled to institute suit against them, in which it was determined that he was entitled to the income from the date of the death of the testator, it was *held* by this court that the legatee should not be required to pay counsel fees to the trustees, but, as they acted on the advice of counsel and in good faith, they were entitled to their commissions; and further that the question of costs should be determined by the lower court.

No. 2892. Submitted February 11, 1916. Decided March 7, 1916.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for an accounting and for a decree compelling the defendant trustees under a will to pay interest on a legacy from the date of the death of the testator. *Reversed.*

The facts are stated in the opinion.

*Mr. Ray S. Reid* and *Mr. John Ridout* for the appellant.

*Mr. Edmund Brady* and *Mr. John W. Yerkes* for the appellees.

Mr. Justice STAFFORD, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal in place of Mr. Chief Justice SHEPARD, delivered the opinion of the court:

This is a bill in equity brought by a legatee against Harriet

D. Dodge and Samuel J. Bradford, executors acting as trustees under a will, for an accounting; and especially to have them ordered to pay interest or income on the amount of the legacy during the year immediately following the death of the testator. The case was heard upon bill, answer, and testimony in open court., A decree was rendered that the defendants pay to the plaintiff a certain balance remaining in their hands after deducting certain sums by way of commissions and attorneys' fees, and costs of suit, but refusing to allow the plaintiff any income or interest for the first year after the death of the testator.

The principal question is whether the plaintiff, Lucien T. Reid, is entitled to any income from the trust fund during the year immediately following upon the death of the testator, or whether his right to the income begins one year from such death. The clause of the will to be considered is:

"4. I bequeath the sum of $10,000 to my executors hereinafter named, to be invested by them in safe interest bearing securities, they to use the income therefrom for the support and education of my grandson, Lucien T. Reid, until he attains the age of twenty-five, at which time they are to pay over or deliver the principal of said trust fund to my said grandson if, in their opinion, his character and habits are then such as to make it safe and desirable to put him in possession of the fund. If, at that time, they deem such delivery unwise and inexpedient, they shall apply the income of the fund as above directed until the death of my said grandson, or until they deem it proper to deliver the fund to him, whichever shall happen first. In the event of the death of my grandson unmarried and without issue before he attains the age of twenty-five, I direct that the above bequest shall revert to my estate; in case he attains that age and dies before delivery of said fund to him, I direct that the same be paid over to his legal representative as a part of his estate. The said fund and income, while in the hands of my executors, shall not be liable in any manner for the debts of my said grandson, and he shall have no power

to anticipate, assign, charge, or hypothecate the same in any manner whatever."

The defendants, the executors, under advice of counsel, refused to recognize any right in the plaintiff to income during the first year, maintaining that they were entitled to the whole of that year to ascertain the condition of the estate, to gather in its assets, and discharge its liabilities, as well as to decide upon and acquire the securities in which the fund should be invested; and in support of their position they cite and rely upon the well-recognized authorities which hold that, as a rule, legacies do not draw interest until they become due and payable, and then only from that time; and that when no time is fixed by the will for their payment they are to be considered as due and payable one year from the testator's decease. They point to the language of the bequest, which is, that they are to invest in securities and use "the income therefrom," as showing that there is no right to interest or income generally, but only to the income from the securities in which the fund shall be actually invested. They say that the only exceptions to the rule invoked by them are: (1) Where the testator stood *in loco parentis* to the beneficiary; (2) where the gift is of an annuity; and (3) where the gift is of a life estate; and that the present case does not fall within any of these exceptions.

The plaintiff, on the other hand, while admitting the general rule as above stated, maintains that the case comes within an equally well-recognized class in which income, or interest in lieu of income, is allowed to the beneficiary from the death of the testator, in order to effectuate the latter's evident intention as shown by the language of his will and the circumstances to which the will applied. His position is that when a trust fund is ordered to be created and the income therefrom to be devoted to the *support,* or the *support and education* of the beneficiary, whether the beneficiary is to have such income for his whole life or only for a limited term, and whether the remainder is to go to others or is to become his own in a certain contingency, the intention of the testator is manifestly to provide for support, or support and education, as the case may be, and, unless the con-

trary plainly appears, the testator must be taken to have in-
tended that the beneficiary should begin to receive the support
and education immediately, and not be put off for a full year
without receiving either. He insists that upon the admitted
facts of this case such was clearly the intention of the testator.

The plaintiff was the testator's grandson. When the will was
made he was a few months less than nineteen years of age.
When the testator died he was five months over twenty years of
age. The testator had never stood *in loco parentis* to the plain-
tiff, because although the plaintiff's mother, daughter of the
testator, was dead, the plaintiff's father was still living and sus-
taining to the plaintiff the usual relation of a parent. But,
it is urged, the plaintiff was at that time in life when education
is ordinarily acquired, and the fund was devoted by the grand-
parent to that purpose. Did the grandparent, it is asked, expect
that a year would elapse after his death, in which there would
be no income for that purpose,—one of the few remaining
years that would naturally be devoted to education? So, too,
of support. If the intent was, as the will plainly states, to
furnish money for the plaintiff's *support,* why should it be
supposed that, for one year after his death, the testator's
grandson was to be without such assistance? Would he not
naturally need support then more than in later years, when he
had acquired an education and come to his full strength? No
suggestion is made that the estate was not ample to meet all the
obligations, and bestow upon other beneficiaries all that the
testator intended to bestow. If the plaintiff is denied the in-
come or interest during the first year, it inures to the benefit of
the widow of the testator (one of the defendant executors) and
to a surviving daughter of the testator, in equal shares.

Particular reliance is placed upon the doctrine that when one
is given a life estate, by the terms of a will, he is entitled to
the use from the decease of the testator. That is undoubtedly
the law at the present day, although formerly doubted. *McLane
v. Cropper,* 5 App. D. C. 276, 297: "Where the will does not
express an intention to the contrary, the rule is now general
that the legatee of the life interest is entitled to receive the in-

come or interest from the time of the testator's death." In that case the trustee was to apply to the use of the widow the "rents, issues, and profits" of her share of the estate "for life." She was held entitled to receive them from the testator's death, although the will provided that at the end of her life the principal "with all accumulations" should go to one in remainder. It is argued that the true ground of such decisions is not that the beneficiary is to have the use *for life* rather than for a term of years, for in both cases the same principle would apply as between tenant and remainderman. How, it is argued, can the length of the tenant's term be of any importance upon such a question? In the understanding of the editor of Perry on Trusts it is evidently of no consequence, for in vol. II. par. 550, note (a) he says: "The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life *or for a limited time* [italics ours], he is entitled to either actual or equitable income from the date of the testator's death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date."

But should not the bequest in the present case be treated as a life interest in an income? If so, and especially as it was given for support and education, the authorities applying to a life estate in income would seem to apply. What, then, did this bequest amount to? Lucien Reid was entitled to the income upon $10,000 for his life, if his life should cease before he arrived at the age of twenty-five years, or if he should live to any other age, unless he should have been found in the opinion of the executors worthy to receive the principal sum, in which case his life interest was to be enlarged into the ownership of the principal fund. What he was absolutely sure of and could not be deprived of was a right to receive the income of the $10,000 during his life. The only condition which affected it was the larger right to receive the principal fund itself whenever, after reaching the age of t..enty-five years, the executors should find him worthy to receive it. Such being his interest in the fund, and it having been given expressly for his support and

education, we fail to see how it can be considered otherwise than as a life estate in the income of the fund.

Even where the interest is uncertain and may be less than for the life of the party, the determination being independent of the will of the grantor, it is a life estate, as was held in *Beeson* v. *Burton,* 12 C. B. 647, 2 Lutw. Reg. Cas. 225, 22 L. J. C. P. N. S. 33. That case concerned the right of John Burton to vote, which depended upon whether he was the holder of a freehold interest in land. He held one of certain "free-ment's allotments," and had the right to hold "so long as he should be willing, and should pay the annual rent, and conform to the orders and regulations to be made from time to time by the deputies," in whom the legal title was vested. The deputies, however, were given the power to sell the land with the consent of the major part of the freemen. Hence the estate was ter-minable, not at the will of the grantor or lessor, but at the will of the trustees, upon their procuring the requisite vote of the freemen. The judges gave their opinions *seriatim,* and all con-curred in the view that the estate was one for life within all the authorities, even as far back as Co. Litt. 42a. Williams, J., whose opinion is expressed in the fewest words, said: "This is clearly an estate of freehold inasmuch as it is for an uncertain interest, which may last for the life of the party, and is not con-fined to the will of the grantor." The case before us is much stronger, because in no event could Lucien Reid's estate be less than one for life. That was the *minimum.*

Closely analogous is *Ayer* v. *Ayer,* 128 Mass. 575. There a testator gave to his brother $100,000 in trust to invest the same, and to use for himself the income during his life, with power to use of the principal as he might have occasion, the remainder, if any, at his decease, to go so and so. It was held that, not-withstanding his power to use and expend the whole fund, the brother took only a life estate therein, and so was entitled to the income thereon from the death of the testator. If the power to dispose of the fund did not prevent the brother's interest from being treated as a life estate, why should the power of the execu-

tors to turn over the principal to the plaintiff, in the present case, have that effect?

The estate being thus to be treated as a life estate, it is clear that the rule laid down in *McLane* v. *Cropper,* 5 App. D. C. 276, is the one to be followed as having the support of the best cases, and in fact of nearly all. We shall notice a few of these, because they will throw light upon the incidental question,— How much ought to be allowed as representing the first year's income?

In *Wethered* v. *Safe Deposit & T. Co.* 79 Md. 153, 28 Atl. 812, the court was called upon to construe a will that gave the residue of the estate to a trustee, to divide "all the net income of the whole estate" into five equal parts, and semiannually to pay one of said portions to each of certain named persons during their lifetime; and held that such persons were entitled to said income from the death of the testator, and that no part thereof could be used for the payment of debts or expenses. The other Maryland cases are carefully reviewed in the opinion, and shown to be consistent with such holding.

In *Union Safe Deposit & T. Co.* v. *Dudley,* 104 Me. 297, 72 Atl. 166, one who was entitled to one fourth of the income upon a trust estate "quarterly during his lifetime," and who died after the testator and before the first quarterly payment fell due, was held entitled to the income from the death of the testator to the time of his own death. The court said: "The will speaks from the date of the death of the testator, and the beneficiaries are entitled to the income from that date." In that case the trust estate consisted of one half the residue of the estate.

In *Doherty* v. *Grady,* 105 Me. 36, 72 Atl. 869, the widow was given the interest upon $40,000, to be paid her during her lifetime by the executors. It was held that she was entitled to the interest from the death of the testator, although the general trust fund out of which the income was to be derived was to be created in part by a sale of real estate and the proceeds deposited in a certain trust company; she being entitled, in the opinion of the court, to an equivalent of the interest customarily paid by

said company, during the period preceding the actual payment
of interest on said trust fund.

The Massachusetts cases are supported to some extent by
the statute in that commonwealth, but also recognize fully the
general rule of law applicable in such cases. *Sargent* v. *Sargent,*
103 Mass. 297; *Pollock* v. *Learned,* 102 Mass. 49.

Notwithstanding this clear recognition of the general rule ap-
plicable to life estates, by the Massachusetts court, it did not
hesitate to give full effect to what it believed to be the real in-
tention of the testator in a case where the will provided that the
executors "in one year after the probate" of the will should pay
to trustees the sum of $10,000, the income from which should
from time to time be paid by the trustees to the testator's son,
according to the judgment of the trustees, during his life, and
the principal, at his decease, to the testator's grandsons. There
the court was convinced that the testator had fixed one year
from the probate as the time from which the son should begin to
enjoy the income, and reversed a decree of the probate court
which had allowed him the income from the testator's death.
*Keith* v. *Copeland,* 138 Mass. 303.

One of the best cases upon the question, when a legatee of in-
come is entitled to be paid from the death of the testator, is
*Cooke* v. *Meeker,* 36 N. Y. 15. There a will gave various sums
in trust to various trustees to be invested upon bond and mort-
gage, the interest and income to be applied to the use of the
respective beneficiaries during life. The estate consisted of
interest-bearing securities and income-producing real estate.
The beneficiaries were held entitled to income from the death
of the testator, notwithstanding a statutory provision that no
legacy should be paid until after the expiration of one year from
the time of granting letters testamentary, unless the same were
directed by the will to be sooner paid. It was held that the stat-
ute was only an affirmance of the common law, and had no appli-
cation to an annuity nor to any legacy which by implication was
given for maintenance and support, the legatees in such cases
being entitled to income from the death of the testator payable
at the expiration of the first year. The same rule is recognized

as applying in cases where the testator was a parent or stood *in loco parentis* to the legatee, unless the legatee was an adult.

In the famous case of *Angerstein* v. *Martin,* Turn. & R. 232, 2 L. J. Ch. 88, 24 Revised Rep. 32, Lord Eldon decided that a legatee for life of a residue which consisted of personalty bearing interest was entitled to the income from the death of the testator, saying that he knew nothing to prevent the executors, if they chose, from paying legacies or handing over the residue within the year, and that where it was clear that the fund for debts and legacies was sufficient there could be no inconvenience in so doing. Roper in his work upon Legacies, vol. 2, star page 1335, after commenting upon the authorities in point, concludes by saying that where a mixed residue of personal estate is bequeathed to one for life with remainder over either with or without an express direction to convert, the tenant for life will be entitled, from the death of the testator, to the interest arising from those parts of the residue in a proper state of investment according to the will, and, from those parts which are converted during the first year, from the time of conversion, and he will also be entitled to interest from the death at the rate of 3 per cent on the net value of all those parts which are not in a proper state of investment, as estimated at the end of the first year from the death.

In *Mills* v. *Robarts,* 1 Russ. & M. 555, Tamlyn, 476, 8 L. J. Ch. 141, the testator had given certain legacies to minors provided they should attain the age of twenty-one years, and had appointed certain persons to act as their trustees and guardians, requesting such persons to superintend their education, and the question was whether they were entitled to income during their minorities. It was held that they were so entitled notwithstanding they might not live to receive the principal sum. Two of the minors are referred to in argument as being illegitimate children, but whether of the testator is not stated. It is argued, however, that by virtue of the will he had placed himself *in loco parentis* to these children. The third minor seems not to have been an illegitimate child, and certainly not a child of the testator, yet it was held that the same principle applied to him.

In a few cases it has been held that when the will, as in the present case, directs the trustees to invest in securities to be selected by them, or requires a conversion of property into another form to serve as an investment, the beneficiaries are not entitled to income from the death of the testator, but only to income beginning one year from his death, upon the theory that the testator expected a year to be allowed for the investment to be secured; but the larger number hold that even in such circumstances the income, or an equitable equivalent therefor, should begin immediately after the death of the testator, and especially when it is apparent that the income was bequeathed for purposes of support and education. Such was the holding in *Re Fish,* 19 Abb. Pr. 209; *Hillyard's Estate,* 5 Watts & S. 30; *Eyre* v. *Golding,* 5 Binn. 472; *Gibson* v. *Bott,* 7 Ves. Jr. 96, 6 Revised Rep. 87.

Attention is to be given to the situation of the estate with respect to its sufficiency to pay debts, expenses, and similar legacies out of personal property properly applicable for that purpose. In the present case it appears from the answer that the testator left in cash at various banks the sum of $3,200, which was not enough to pay debts and costs of administration, and that the executors found it necessary to sell some of the stocks of the estate in order to create the trust fund for the legacy in question. It also appears that among the assets of the estate was bank stock to the amount of $10,000, which the executors considered a proper fund for the investment of this legacy, and offered the plaintiff to treat the same as such investment. So it would appear that there were interest-bearing securities yielding sufficient income to have enabled the executors to pay to the plaintiff an equitable income upon $10,000 at the end of the first year.

When a legatee is entitled to income from the testator's death, it is no obstacle that the precise income to which he may be entitled is not ascertainable during the first year. In lieu of specific income he may be allowed an equitable sum representing it. *Bishop* v. *Bishop,* 81 Conn. 509, 71 Atl. 583; *Baker* v. *Fooks,* 8 Del. Ch. 84, 67 Atl. 969.

So, where one is given by a will the income upon a certain sum, for life, although the sum is to be invested by the trustee, and may not be invested until a year or more after the testator's death, the legatee is still entitled to income from the testator's death. *Re Stanfield,* 135 N. Y. 292, 31 N. E. 1013; *Cooke* v. *Meeker,* 36 N. Y. 15; *Williamson* v. *Williamson,* 6 Paige, 304.

In view of the situation evidently existing in the estate of Taylor, it is equitable that this legatee of a life interest in the income upon $10,000, given for his support and education, should be allowed interest at 5 per cent from the death of the testator. That, we think, is only carrying out the obvious intent of the testator, and is, as we have seen, in accordance with the well-established rule in such cases, clearly recognized and approved in *McLane* v. *Cropper,* 5 App. D. C. 276.

As the decree below must be reversed, and a new decree rendered in the court below allowing the plaintiff said interest for the first year, and as the former decree proceeded upon the theory that the plaintiff had only himself to blame for not having received and receipted for the income, excluding that of the first year, in full of all claim for income to the date of receipt, the decree must be modified in respect to the allowance of attorneys' fees to the executors. The answer explicitly admits that the executor had required the plaintiff to accept the interest they tendered "in full settlement of interest up to the date of said payments" (par. 10). The plaintiff was justified in refusing to receive the interest accompanied by this condition, and, having been put to the necessity of the proceeding to recover what he was entitled to receive, he should not be required to pay the executors their counsel fees; but as they acted under the advice of counsel and in good faith, they should be allowed their commissions. The question of costs should be determined by the equity court in view of the new decree to be rendered.

The decree will be reversed and the cause remanded.

*Reversed.*