## WILLARD WELSH *vs.* MELISSA J. BRIGGS.

Suffolk.     March 4, 1909. — February 21, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Land Court,* Master, Exceptions, Appeal. *Public Officer, De facto, De jure. Tax,* Assessment, Collection, Tax sale. *Mortgage,* Assignment, Foreclosure. *Evidence,* Competency, Relevancy.

Although questions of law arising upon an order of a judge of the Land Court overruling exceptions to a master's report can be brought to this court by a bill of exceptions, the proper method of doing so is by an appeal, for when an appeal is taken the whole record is before this court and it can dispose of the case by directing what the final decree shall be, but when a bill of exceptions is resorted

to the case must be remanded to the Land Court for further hearing, per LORING, J.

Where it appears that on May 1 of a certain year persons, who were acting as assessors of taxes of a city, were doing so after their terms of office had expired and without reappointment, but that before the assessments of taxes for that year they took a certain oath before the city clerk, and thereafter acted as assessors in making the assessments, it is immaterial, so far as the validity of such assessments is concerned, whether the correct oath was administered to them or not, since it is apparent that they were acting as assessors *de facto*, and whether they also were assessors *de jure* does not affect the validity of their acts.

On the issue, tried before a master appointed by the Land Court, as to whether a tax upon certain real estate was assessed by the board of assessors, the evidence was that a principal assessor, a first assistant assessor and a second assistant assessor for the district in which the land was situated "assessed" the land, the first assistant "being the local man and having all the say." It also was shown that the assessment of the land "appears on the assessor's books," that is, on the books of the board of assessors specified in Pub. Sts. c. 11, §§ 50-54, now R. L. c. 12, §§ 56-60. The master found that the assessment was made by the board of assessors as a whole or by a majority thereof. *Held*, that the finding was warranted, since the true explanation of the evidence above stated was that the board adopted the report of the assessor for the district and his two assistants.

An exception to a ruling of a judge of the Land Court overruling an exception of a respondent to the report of a master will not be sustained where from the report of the master it appears that no particular objection to the finding excepted to was pointed out to the master by the respondent, and no evidence on the subject is reported, since no error in the ruling is shown.

From a bill of exceptions to rulings of a judge of the Land Court as to exceptions to a master's report by the respondent in a petition for the registration of the title to certain land, it appeared that the owner of the locus in 1874 sold it to one from whom he took back a mortgage to secure the payment of a part of the purchase price, assigned the mortgage "as collateral," and later caused a *caveat* to be recorded in which he averred that the assignment was invalid. The person who had received the assignment "as collateral " assigned the mortgage absolutely to one who caused it to be foreclosed. The original mortgagee in the meantime having become bankrupt, the assignee of the mortgage who had foreclosed it procured from the "assignees in bankruptcy " an assignment of the mortgage and recorded such assignment " with his deed from said foreclosure." *Held*, that whether or not the assignment made to the person who foreclosed the mortgage by the person who had held the assignment "as collateral " gave a right to foreclose it, was not material since the only persons who could object thereto were the "assignees in bankruptcy " and they had assigned their rights to the person who had received a deed "from said foreclosure."

From a bill of exceptions to rulings of a judge of the Land Court as to exceptions to a master's report by the respondent in a petition for the registration of the title to certain land, it appeared that the owner of the locus in 1884 had sold it to one from whom he received a mortgage back, and that the respondent had received in 1905 from the administrator of the estate of such mortgagee an assignment of the mortgage by virtue of which he claimed the right to redeem the land from a tax sale. At the trial before the master after March, 1905, there was admitted in evidence the testimony of one who had been the guardian of

the mortgagee after 1884 to the effect that he never knew that his ward ever held any such mortgage, and the testimony of the administrator of the mortgagee's estate to the effect that he never saw such a mortgage or mortgage note, and that he had made the assignment to the respondent only when told of the mortgage by the respondent's attorney, and when offered money therefor. The master found that no valid mortgage existed in 1905 and that nothing was assigned to the respondent. *Held,* that the testimony of the guardian and of the administrator of the mortgagee's estate was admissible, and that the finding was warranted by the evidence.

A master, to whom a case is referred by the Land Court, is not required to report the evidence upon which he bases his findings unless the order of reference directs him to do so; and an exception to a ruling of the judge of the Land Court sustaining the master in a refusal so to report the evidence will not be sustained if neither the bill of exceptions nor the record disclose what was included in the order of reference.

The title of the purchaser at a sale for the collection of a tax, which had been assessed upon real estate in the name of one who had purchased at a previous tax sale for the collection of a previous tax, is not rendered invalid by reason of the fact that the tax for the collection of which the previous sale was made was assessed to one who was not the owner of the land.

A tax deed is not rendered invalid because, in describing the parcel of land conveyed, a reference to it as a lot of a certain number on a plan of a certain date recorded on a certain page in a certain volume of assessor's plan "on file with Suffolk Deeds," described the plan as "made by W. E. Jackson," whereas the plan was made by "W. H. Jackson."        °

At the hearing before a master appointed by the Land Court upon a petition for the registration of the title to certain land, the validity of a tax title was in question, and the respondent requested the master to rule that "No evidence was offered that petitioner paid the collector within twenty days the amounts bid by him, under R. L. c. 13, § 47, which alone precludes the title," and the master ruled, "I refuse the . . . request and I find on the contrary that the petitioner did pay within twenty days the amount bid by him. I base this finding on the dates of execution and acknowledgment on the face of the tax deeds." *Held,* that the master's inference of fact was warranted and that for that reason the ruling requested was not applicable and therefore was refused rightly.

Two years and four months after filing his answer to a petition in the Land Court for the registration of certain land, and twenty-three days after the filing of the report of a master to whom the case had been referred and before whom it had been fully tried, the respondent filed a motion that the petition be dismissed on the ground that the petitioner did not comply with R. L. c. 128, § 25, as to filing plans and original muniments of title within his control. The motion was denied. *Held,* that the judge was not bound to dismiss the petition under such circumstances.

Land conveyed by a tax deed was described therein as of a certain area "on the northerly side of S. Street," and as being a lot of a certain number on a certain plan, and a judge of the Land Court, before whom was tried a petition for registration of the title to the land, ruled "that the tax proceedings under which the petitioner claims title covered a tract of land including the fee in the portion of the street adjoining the land therein described to the middle line," and refused to rule that the tax deed was void because the line of the estate taxed ran to the middle of S. Street and the line as described in the tax deeds did not. *Held,* that there was no error in the ruling and the refusal to rule.

PETITION filed in the Land Court on March 29, 1905, for the registration of the title of three lots of land on George Street and Spring Street in that part of Boston called Brighton, being lots numbered 23, 24 and 25 as shown on a plan of W. R. Jackson dated June 6, 1874.

The case was referred to Carleton Hunneman, Esquire, as master. From his report, which was filed on October 28, 1907, it appeared that to establish his title the petitioner relied on three several tax deeds from the collector of taxes to himself, one upon each lot, all being dated January 11, 1900; and the master found as to each lot that on May 1, 1898, Michael Barrett was the person appearing in .the records of the county where the real estate lay as the owner thereof within the meaning of St. 1889, c. 84, § 1.

As to the election and qualification of assessors and assistant assessors of taxes for that year, the master's report stated:

" I find that some of the assessors of the city of Boston in office May 1, 1898, and up to the assessment of the tax for 1898 on the lots under consideration were holding over from preceding years.

" The defendant Briggs objected to evidence showing that those assessors were appointed in previous years, were holding over performing the duties of assessors, and that no assessors had been appointed to succeed them. I overruled this objection and I find that they were all duly appointed, confirmed and qualified originally, that some were holding over from previous years, and I rule that they were legally acting as assessors at the time of this assessment.

" On the question of the oath, the testimony of the city clerk and the assistant city clerk was to the effect that all of the assessors in office at the time of the assessment of taxes for 1898 had qualified by taking the required oath before one or the other of them. A book was also put in evidence (being in the custody of the city clerk) containing entries showing that each of the assessors had been sworn, also the date of the oath, and the official by whom the oath was administered. The book contained entries of oaths administered to many other city officials, many entries being made on each page. At the top of each page was a printed form of oath, separated from the

written entries below, which printed oath was not the one required of assessors. Against the objection of the defendant, I allowed the testimony of the city clerk and assistant city clerk to the effect that the printed oath was not the oath administered to the assessors, and that on the contrary the oath required of assessors was administered. I find this to be the fact and I therefore rule that the assessors acting at the time of the assessment of the tax for 1898 were all duly appointed, confirmed and qualified. . . .

" I find that the first and second assistant assessors acting as such during the term of the assessment of the tax for 1898 were duly appointed and both assigned to the district in which the land in question is located. I find that they qualified before the assistant city clerk under the same circumstances as did the principal assessors. I admitted the same testimony relative to the oath against the objection of the defendant that it tended to vary a written instrument. I therefore rule that these assistant assessors were duly appointed and qualified as such."

The master also found that the other formalities preliminary to the assessment were observed, and that each lot was assessed to Michael Barrett by a proper description. The report also states: "I further rule, despite the respondent's request for ruling, that the fact that the assessment appears on the assessor's books is evidence sufficient to justify a finding that the assessment was made by the board of assessors as a whole or a majority thereof, despite the testimony of Kendall, the clerk of the board of assessors — that the local assessor and his assistants assessed these lots."

As to the commitment to the collector of the tax list, the master found: " I find that the board of assessors duly committed to the collector of taxes the tax list for 1898 with their warrant, dated November 17, 1898, which tax list and warrant is in the office of the collector of taxes of Boston, and I find that the tax list committed contained everything required by law. The defendant's objection to the warrant that it was not in accordance with law, no particular objection being pointed out, is therefore overruled."

The report also stated in detail that the necessary formalities preliminary to the sale were observed by officers duly qualified,

and that the sale was held in due form, and deeds were duly executed and recorded.

As to the descriptions in the deeds, he found:

"As to the descriptions in the deeds, it appears that the name of the surveyor who made the plan referred to in the several deeds, was recited in the assessment of the tax and in the notice of sale as W. R. Jackson and in the tax deed as W. E. Jackson. I find that this error did not mislead, and I rule that it is immaterial.

"As to lot 24 I find that this was assessed and advertised to be sold as 15,000 square feet, but that the deed conveyed 14,938 square feet, assessed as about 15,000 square feet. I find that this discrepancy in area did not mislead, and that the lot assessed was the lot that was sold. I therefore rule that the discrepancy in area was immaterial."

He also found that subsequent tax titles acquired by other purchasers at tax sales in January and October, 1902, had been conveyed to the petitioner, and on all the evidence found " that the petitioner obtained a clear title under each of said tax deeds; subject to any rights of redemption provided by law." The report then continued as follows:

"The respondent, Melissa J. Briggs, however asserts that if it shall be found that the petitioner has made out a good title to the lots under consideration, she is entitled to redeem one or more of them. . . . I find that the respondent did not offer to redeem any of the lots within two years from the date of sale, and I therefore rule that even if she were an owner, she has lost her right to redeem any of the lots *qua* owner."

The report then stated facts which showed that the respondent had no right to redeem after two years from the date of the sale and within two years of actual notice of it, since she had no ground for contending that the land had been assessed as belonging to persons unknown, or that the person named in the tax list was not the owner but merely a tenant or occupant of the premises, or that in the tax lists, notices or deeds there had been any substantial and misleading error in the name of the person taxed. As to whether she had such right on the ground that she was at the time of the assessment a mortgagee of record and that the tax was not assessed to her, the report was as follows:

" As to lot 23, the right of the respondent as mortgagee to redeem this lot must rest on an assignment to her in 1905 of a mortgage given by one Charles T. Wood to Benjamin Woodward on September 12, 1884.   It appears from the examiner's report that Wood's title upon which this mortgage must depend for its validity is a tax title, the legal sufficiency of which has not been established.   Further one Granville W. Clapp, who was guardian of said Woodward subsequent to 1884, testified against the objection of the respondent that he never knew that his ward ever held any such mortgage.   William E. Clapp, the administrator of the estate of said Woodward, testified also against the objection of the respondent that he had no knowledge that his intestate had any such mortgage, that he never saw the mortgage or note, and only assigned it to the respondent when told of it by her attorney and being offered money for the same.

" On the foregoing evidence I find that no valid mortgage existed at the date of the assignment to the respondent in 1905, and I therefore rule that she is not a mortgagee of record.

" I further rule that a holder of a mortgage who claims the right to redeem within two years after actual notice of a tax sale must show not only that he himself had notice of the sale for the first time within two years of the offer to redeem but also that no preceding holder of the mortgage who has held the same at the time of such sale or subsequent thereto had notice more than two years before the offer to redeem.   I find that there is no evidence tending to show that Woodward or his guardian or his administrator had no knowledge until within two years of the respondent's offer to redeem.   I therefore find that the respondent has failed to show affirmatively that there was no actual notice of the tax sale until within two years of her offer to redeem.

" I find that the respondent did offer to redeem and that such offer was refused. . . .

" As to lot 24, there is no evidence that the respondent had any interest therein as mortgagee.   I therefore rule that the respondent has no right as mortgagee to redeem the same.

" As to lot 25, I rule that there is no evidence tending to show that the respondent had any interest therein as mortgagee.

I therefore rule that the respondent has no right as mortgagee to redeem the same.

" The respondent offered to show that she was entitled to redeem one or more of the above lots as assignee of certain mortgages. It appeared that the assignments on which she relied were made by parties who were respondents in this case and that such assignments were executed by them after they had been defaulted in this action. I ruled against this respondent's objection that such assignments could not be offered in evidence as showing a right to redeem thereunder, on account of the default.

" I therefore rule that the respondent, Melissa J. Briggs, is not entitled to redeem any of the lots and I find on the whole case for the petitioner."

On November 20, 1907, the respondent filed a paper entitled " Requests of the Court," the first of which requests was as follows: " And now comes respondent and asks the court to rule and require that all evidence, offered by either party in this case before the master, in which objections and exceptions are taken, should be reported in full to this court before arguments upon the exceptions, or that the parties be allowed to show what that evidence was, or to introduce the same evidence before this court." The motion was denied on the same day that it was filed, and no appeal or exception was taken.

On November 20, 1907, the respondent also filed a motion that the petition be dismissed because the petitioner had not filed with his application " a plan of the land, and all original muniments of title within his control mentioned in the schedule of documents."

The foregoing motion to dismiss, together with objections and exceptions to the report, filed by the respondent, were heard and overruled by *Davis,* J., on January 22, 1908; and the respondent alleged exceptions. The exceptions are described in the opinion.

Although the case was heard by a master, whose report stated no evidence except that already described, and although an informal motion by the respondent to recommit the report to the master for a report of the evidence, or to be allowed to exhibit such evidence to the court, had been denied, the trial

judge allowed a bill of exceptions which contained extended recitals of the evidence which was introduced before the master. Much of such evidence is stated in the opinion.

The case was submitted on briefs at the sitting of the court in March, 1909, and afterwards was submitted on briefs to all the justices.

*B. F. Briggs,* for the respondent.

*J. Bennett, H. Bergson & W. A. Parker,* for the petitioner.

LORING, J. The petitioner Willard Welsh brought a petition in the Land Court to register his title as the owner in fee of three contiguous lots of land situate in the city of Boston.

In accordance with R. L. c. 128, § 29, the application was referred to an examiner. The examiner made an adverse report. But the petitioner elected to proceed and the case was referred to a master as contemplated by the fifteenth rule of that court.

The master made a report on October 28, 1907. Ten exceptions were taken by the respondent to the master's report. It is stated in the decision of the Land Court, made a part of the bill of exceptions now before us, that "The exceptions are somewhat loosely drawn and it is not always clear just what ruling of the master or to what objection thereto they refer, but it is clear that all of the matters intended to be covered by the exceptions were made the subject of objection."

The exceptions to the master's report came on to be heard by the Land Court at some time before January 22, 1908, and on January 22, 1908, they were overruled.

At some subsequent date the respondent filed a bill of exceptions which was allowed by the judge of the Land Court on September 8, 1908. In this bill of exceptions the respondent states that she appeals from the " opinions, rulings, refusals to rule, directions or judgments of the court in matters of law " set forth in the bill of exceptions.

Rules 16 and 17 of the Land Court adopt the same method of objecting and excepting to a master's report as that set forth in Equity Rules 31 and 32 of this court. R. L. c. 128, § 13, provides that " questions of law arising in the Court of Land Registration on any decision or decree may be taken by any party direct to the Supreme Judicial Court for revision, in the

same manner as questions of law are taken to that court from the Superior Court." The proper method of taking to this court questions of law arising from an order of the Land Court over-ruling exceptions to a master's report is by an appeal and not by bill of exceptions. See *O'Brien* v. *Keefe*, 175 Mass. 274. Al-though it can be done by way of a bill of exceptions. *McCusker* v. *Geiger*, 195 Mass. 46. *Kennedy* v. *Welch*, 196 Mass. 592. When an appeal is taken from an order of the court over-ruling or sustaining exceptions to a master's report, the whole record is before the appellate court and it can dispose of the case by directing what the final decree is to be. But where the correctness of the order of the court overruling or sustain-ing exceptions to a master's report is brought up by a bill of exceptions, the case has to go back to the inferior court for further hearing.

Most of the exceptions set forth in this bill of exceptions are exceptions to the action of the Land Court in overruling excep-tions taken to the master's report. The exceptions taken to the master's report are not altogether reconcilable in some instances with the statement of them in the bill of exceptions.

Dealing first with the exceptions taken to the master's report:

1. It was of no consequence whether the evidence as to the oath actually administered to the assessors was rightly admitted or not. There is enough in the record to show that the assessors who laid the assessment on which the tax deeds, relied on by the petitioner, were founded were officers *de facto*. So far as the validity of their action is concerned there is no difference between an officer *de facto* and an officer *de jure*. See *Common-wealth* v. *Wotton*, 201 Mass. 81, 84.

2. The next exception is that the master had no right to find that the assessment under which the three lots of land here in question were sold was made by the board of assessors. One Kendall testified that Hichborn " was appointed assessor May 16, 1898, and took said oath as recorded, May 17, 1898, was the assessor for ward 25, who with Ben. M. Fisk as first assistant, and Pat. F. Carley, as second assistant, assessed these three lots May 1, 1898, said Fisk being the local man and having all the say." It is stated that the assessment of these three lots " ap-pears on the assessors' books." This must be taken to mean

that these assessments were entered on the books specified in Pub. Sts. c. 11, §§ 50–54. The master was right in ruling that this warranted a finding that the assessment was made by the board of assessors as a whole, or a majority thereof, in spite of Kendall's testimony. The true explanation of Kendall's testimony could be found to be that the board adopted the report of the committee.

3. The next exception is to the finding by the master that the board of assessors duly committed to the collector of taxes the tax list of 1898 with their warrant. The respondent's contention in this connection is that R. L. c. 12, § 56, requiring the book in which the assessments are made to be deposited in their office for public inspection, was not complied with. We assume that the defendant meant that Pub. Sts. c. 11, § 50, not R. L. c. 12, § 56, were not complied with, for the Revised Laws did not go into effect until several years after these taxes were assessed. Of this it is enough to say that there is nothing to show that Pub. Sts. c. 11, § 50, was not complied with. The evidence on which the master made his findings is not before us. The burden is on the excepting party to show error. This exception was rightly overruled.

4. The next exception is to the refusal of the master to rule that one who holds a mortgage as collateral can foreclose it. This was refused by the master, " it being inconsistent with my findings." What the " findings " were which are here referred to by the master is not plain. The bill of exceptions sets forth the body of the examiner's report, but the sheets referred to in it are not given, and for that reason the facts as to the title found by the examiner do not appear. The examiner reported that the title to lot 24 was in Michael Barrett on May 1, 1898, to whom the tax was assessed in 1898, for non-payment of which that lot· was sold to the petitioner. It is stated in the bill of exceptions that this title in Barrett originated in a deed by the owner made in 1874 and a mortgage back by the grantee. We infer that this owner was one Sparhawk. It is further stated in the bill of exceptions that on September 3, 1874, Sparhawk assigned this mortgage to one Woodward " as collateral " and on July 30, 1875, caused a *caveat* to be recorded in which he claimed that he never made a valid assignment of the note or mortgage here in ques-

tion. At some time Woodward (to whom Sparhawk assigned the mortgage "as collateral") assigned it absolutely, "and it was by virtue of this assignment that Solomon Howes made the foreclosure the examiner called 'valid'" — to quote the words of the bill of exceptions. But it is stated in the bill of exceptions that "Howes had also obtained an assignment of said mortgage from the assignees in bankruptcy of said George Sparhawk which he recorded with his deed for said foreclosure," to quote again from the bill of exceptions. If the title which Howes got by assignment to him by Woodward of the mortgage to Sparhawk and the foreclosure made under it or either of them was invalid because Woodward held the mortgage only as collateral, Sparhawk was the person and the only person who could complain of that invalidity and the right to make that complaint passed to his assignees in bankruptcy and was assigned by them to Howes. The question of law put forward by the respondent was therefore immaterial and this exception must be overruled.

5. The next exception is to the finding of the master on the testimony set forth in the bill of exceptions that no valid mortgage existed in 1905, when the administrator of one Woodward assigned to the respondent a mortgage of lot 23 given by one Wood to Woodward in 1884. It is stated that Woodward was the grantee of a tax deed dated in 1880 for taxes on this lot for 1879, and that he conveyed the lot to Wood in 1884, who at that time gave a mortgage back. This mortgage was assigned to the respondent at some time in 1905. One Granville Clapp, who was the guardian of Woodward after 1884, testified that he never knew that his ward ever held any such mortgage; and the administrator of Woodward's estate testified that he never saw the mortgage or the mortgage note, and assigned it to the respondent only when told of it by the respondent's attorney and when offered money for the same. Twenty-one years elapsed between the date of the mortgage and its assignment to the respondent. The expiration of twenty years of itself warranted a presumption that this mortgage had been paid, and when this evidence was added to that presumption it is hard to see how the master could have refused to find that if ever there had been in fact a mortgage debt it had been paid.

6. The next exception is to the admission of the testimony stated above of the guardian of, and of the administrator of the estate of Woodward. The evidence was admissible for the purpose above stated.

7. The next exception is to the failure of the master to report all the evidence "pertaining to this and other exceptions." The rule referring the case to the master is not set forth. If it did not require him to report the evidence, the master was not obliged to do so.

8. The next exception is to the master's finding that the assessments on which the petitioner's tax titles are founded were valid "because it appears from the record title, and is uncontroverted, that the tax sales to Barrett in 1884 were based on assessments to purchasers under prior tax titles, which prior tax titles were invalid because of being themselves based on illegal assessments apparent on the record." We understand the ruling by the master which was excepted to and the exception to which was overruled by the Land Court, to be this : If land owned by A. and standing in his name in the registry of deeds is assessed to B. as the owner of it and is sold for taxes and bought by C., and afterward the land in question is assessed as the land of C. sold for taxes and bought by D., D. gets a good title. That proposition must be taken to be concluded by *Roberts* v. *Welsh,* 192 Mass. 278 ; see in this connection *Rogers* v. *Lynn,* 200 Mass. 354. This exception must be overruled.

9. The next exception is to the master's ruling that the description in each of the tax deeds is sufficient to identify the land conveyed. The description of the land conveyed by the tax deed of lot 23 is "About fourteen thousand nine hundred and thirty-eight (14,938) square feet of land, on the northerly side of Spring street, adjoining another estate of said Barrett, being lot numbered twenty-three (23), as shown on a plan made by W. E. Jackson, dated June 6, 1874, as shown on Assessors' plans, Volume II, Page 34, on file with Suffolk Deeds. The premises above described are situated in Block 23 of Sec. in the Brighton District, in said City of Boston, as shown in the Assessors' books of Plans filed in the Suffolk Registry of Deeds." The descriptions in the two other deeds are similar. The contention on which this exception rests is that the plan dated

June 6, 1874, as shown on Assessors' Plans, Vol. II. p. 34, on file with Suffolk Deeds, is by W. H. Jackson, not W. E. Jackson. There is nothing in this exception. There is nothing in the cases cited by the respondent which supports her contention.

10. The next exception is because the master ruled that "no evidence of payment within twenty days outside of the deeds was necessary." The requests for rulings made by the respondent to the master are made part of the bill of exceptions. The fifth ruling asked for was "No evidence was offered that petitioner paid the collector, within twenty days, the amounts bid by him, under § 47, c. 13, R. L., which alone precludes his title." The rulings of the master are also made part of the bill of exceptions. His ruling on the fifth request was in these words: "I refuse the fifth request and I find on the contrary that the petitioner did pay within twenty days the amount bid by him. I base this finding on the dates of execution and acknowledgment on the face of the tax deeds." We interpret the statement of this exception in the bill of exceptions to be an inaccurate statement of the ruling made. The master's inference of fact was warranted and for that reason the ruling was not applicable. In *Holt* v. *Weld*, 140 Mass. 578, relied on by the respondent, it affirmatively appeared that payment was not made within the twenty days.

This brings us to the exceptions taken to rulings made by the Land Court arising on the master's report after the exceptions to it had been overruled.

11. On November 20, 1907, the respondent filed a motion to dismiss because the petitioner did not file any plans or the original muniments of title within his control, as provided in R. L. c. 128, § 25. The respondent was entitled to have these filed, and on seasonably making a motion to that effect would have secured an order for their production. If the order had not been complied with the petition might have been dismissed. But that method of procedure was not followed. No order for the filing of plans or original muniments of title was made. But two years and four months after she put in an answer to the merits this motion to dismiss was filed by the respondent. The judge was not bound to dismiss the petition under those circumstances, and this exception must be overruled.

12. The respondent asked the judge to rule that the tax deeds to the petitioner were void because the line of the estate taxed ran to the middle of Spring Street and the tax deeds do not. This was refused and an exception was taken.

The description of the land conveyed by the first tax deed is: "About fourteen thousand nine hundred and thirty-eight (14,938) square feet of land, on the northerly side of Spring street, adjoining another estate of said Barrett, being lot numbered twenty-three (23), as shown on a plan made by W. E. Jackson, dated June 6, 1874, as shown on Assessors' plans, Volume II, Page 34, on file with Suffolk Deeds. The premises above described are situated in Block 23 of Sec.    in the Brighton District, in said City of Boston, as shown in the Assessors' book of Plans filed in the Suffolk Registry of Deeds." The descriptions in the other two deeds are similar.

The Land Court ruled "that the tax proceedings under which the petitioner claims, covered the tract of land which included the fee in the portion of the street adjoining the land therein described, to the middle line thereof." To this ruling the respondent excepted. Neither of these two exceptions have been argued. For that reason they might be taken to have been waived. We find no error in them and they should be overruled.

We have not discussed some questions argued by the respondent not raised by this bill of exceptions.

*Exceptions overruled.*