(No. 14071.—Decree affirmed.)

MABEL PALMER *et al.* Appellees, *vs.* THOMAS T. JONES *et al.* Appellants.

*Opinion filed October 22, 1921.*

1. WILLS—*construction of devise to one individual and to the surviving children of another.* A devise to a life tenant and his wife, with a provision that at their death the property shall be equally divided between the testatrix's sister and the surviving children of her brother, will be construed as a devise to the children as a class who take equally with the sister, *per stirpes* and not *per capita,* and will not be construed as including the sister in the class with the surviving children or as requiring her to survive the life tenants. (*Dollander* v. *Dhaemers,* 297 Ill. 274, followed.)

2. SAME—*construction of devise of remainder "after the death" of a life tenant.* The words "at the death" or "after the death," in a devise of a remainder after a life estate, ordinarily refer not to the period of the vesting of the estate but to the period of its coming into possession, and will be so construed in the absence of any contrary intention expressed in the will.

APPEAL from the Circuit Court of Kane county; the Hon. ADAM C. CLIFFE, Judge, presiding.

HARRY G. HEMPSTEAD, for appellants.

A. G. KENNEDY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree of partition rendered by the circuit court of Kane county.

Lucinda Glidden at the time of her death, on September 30, 1895, was the owner of the north half of lots 5 and 6 in block 5 of Gates' addition to the village of Blackberry, (now Elburn,) in Kane county. She executed her will on July 31, 1895, which was admitted to probate and disposed of the real estate in controversy in the following language: "I also give and bequeath to Miles and Bell Willis, his wife, the house and lot in the city of Elburn in the county of

Kane and State of Illinois, the following described real estate, to-wit:  The north half of lots five (5) and six (6) of block five (5) of Gates' addition to the village of Blackberry, now Elburn, for the consideration of one dollar a year and they pay taxes and insurance on said property at their death I would like to have it equally divided between my brother Elisha surviving children and my sister Eliza Gates remember equally, if you prefer other otherwise let your wish be granted."  There is no other provision relating to real estate in the will, which consists otherwise of about two dozen bequests of small sums of money or articles of personal property, a bequest of $1200 in bank stock, a bequest to Ellen Cusick of the interest that may accrue on the balance of the notes and mortgages held by the testatrix, the interest to be paid to her every six months by William Bush and Elisha Warne as executors, and a bequest at Ellen's death of "the principal of the money left her to be equally devided betweene my brother Elishas surviving children and my sister Eliza Gates surviving children."

The testatrix left a husband surviving her, who died in October, 1906.  Miles Willis died March 12, 1905, and Bell Willis September 28, 1914.  Elisha Warne, the brother of the testatrix mentioned in her will, died November 23, 1905, and Eliza Gates, her sister, on January 26, 1899.  At the date of the testatrix's death Elisha Warne had two children, Oakley H. Warne and Ernest E. Warne, who are still living and were the only children of Elisha Warne surviving at the death of the testatrix or at any time since.  Eliza Gates had five children living at the testatrix's death, who are still living and are the only children of Eliza Gates surviving the testatrix or at any time since.  On July 7, 1915, Oakley H. Warne and Ernest E. Warne and their wives conveyed the real estate in question to Thomas T. Jones and Sarena Jones, his wife, who subsequently conveyed six feet off the south side of the north half of lot 6 to Helen M. Spalding.  On the death of Bell Willis, in September, 1914, Oakley H.

Warne and Ernest E. Warne took possession of the real estate, and they and their grantees have been in possession of it ever since. Mabel Palmer, Olive Gibson, Frank W. Gates, Gideon W. Gates and Elva F. Thorp, the five children of Eliza Gates, brought suit for the partition of the premises against Thomas T. Jones, Sarena Jones and Helen M. Spalding, claiming that upon the death of the testatrix Oakley H. Warne and Ernest E. Warne took under her will each an undivided one-fourth of the real estate, and that upon the death of Eliza Gates the complainants each took an undivided one-tenth of the real estate. The court rendered a decree in accordance with the prayer of the bill, awarding to the complainants each an undivided one-tenth of the premises in controversy, and to the defendants Thomas T. Jones and Sarena Jones, as grantees of Oakley H. Warne and Ernest E. Warne, each an undivided one-fourth of the premises, except six feet off the south side of the north half of lot 6, and to the defendant Helen M. Spalding an undivided one-half of that six feet. The defendants have appealed from this decree.

There is no dispute about the facts, since they are all agreed upon by stipulation. It does not appear who were the heirs of the testatrix. It seems apparent from the will that the intention of the testatrix was that all of her property, except the special bequests which were made to various legatees, after the death of the persons to whom it was given for life should go to her brother and sister or their children. So far as the personal property was concerned, she directed that it should be divided equally, after Ellen Cusick's death, between the surviving children of her brother, Elisha, and the surviving children of her sister, Eliza Gates. The disposition of the real estate was somewhat different, inasmuch as she declared that it was her wish that it should be equally divided between her sister, Eliza Gates, and the surviving children of her brother, Elisha. The will contains no indication of the reason for these differing provisions in the case

of the personal property and the real estate, by which the sister herself is made the beneficiary of the devise of the land and her surviving children of the bequest of the personal estate. The will itself bears evidence that it was prepared by a somewhat illiterate person, not acquainted with the technical requirements of the testamentary disposition of property. The controversy is concerned with the construction of that portion of the devise which provides, "at their death I would like to have it equally divided between my brother Elisha surviving children and my sister Eliza Gates remember equally, if you prefer other otherwise let your wish be granted," and no other part of the will is of any assistance in determining the meaning of the language employed. While the language is not the most appropriate or intelligible, it seems reasonably clear that the intention of the testatrix was that the remainder in the lots, after the life estate of Miles and Bell Willis, was devised to Eliza Gates and the children of Elisha Warne.

It is the contention of the appellants that the gift to "my brother Elisha surviving children and my sister Eliza Gates" was a gift to a class, the members of which were to be determined at the death of the life tenant and include only those who are surviving at that time; that the remainder to Eliza Gates and the children of Elisha Warne was contingent, and that Eliza Gates not having survived the period of distribution could not take under the will. We said in *Blackstone* v. *Althouse*, 278 Ill. 481: "A class, in its ordinary acceptation, is a number or body of persons with common characteristics or in like circumstances or having some common attribute, and, as applied to a devise, it is generally understood to mean a number of persons who stand in the same relation to each other or to the testator." The definition of such a devise in Jarman on Wills (vol. 1, 6th ed. *232,) which has been generally approved, is as follows: "A gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be as-

certained at a future time, and who are all to take in equal
or in some other definite proportions, the share of each be-
ing dependent for its amount upon the ultimate number of
persons." *(Volunteers of America* v. *Peirce,* 267 Ill. 406;
*In re King's Estate,* 200 N. Y. 189.)   We have recently
considered the effect of a devise to an individual named or
to several named individuals and to the children of another,
share and share alike, and after a review of the decisions,
which were found to be in irreconcilable conflict, we ar-
rived at the conclusion that the rule supported by the weight
of authority and sound reasoning is, that the children in
such a devise are to be considered as a class and to take
under the will equally with the individuals named, *per stirpes*
and not *per capita. Dollander* v. *Dhaemers,* 297 Ill. 274.

It is argued on behalf of the appellants that the devise
is to persons who survive the life tenant and is therefore a
contingent remainder, which will vest only in those persons
who survive the period of distribution.   The words of sur-
vivorship do not apply to Eliza Gates who is named, but
only to the surviving children of Elisha Warne.   It is ar-
gued, however, that even though the words of survivor-
ship apply only to the children of Elisha Warne, still the
will shows that the testatrix intended the property should
go to the devisees at the expiration of the life estate, which
should be the time of distribution, and that only the devisees
living at that time should participate.   The words "at the
death" or "after the death," in a devise of a remainder after
a life estate, ordinarily refer not to the period of the vesting
of the estate but to the period of its coming into possession.
So far as the named devisee in this case is concerned, there is
nothing in the will to take it out of the ordinary rule, which
would vest the remainder in her at the death of the testa-
trix.   Whether the word "surviving," as applied to the
children of Elisha Warne, refers to the death of the tes-
tatrix or the death of the life tenants it is not necessary to
determine, for the survivors in either case were the same.

The remainder in 'an undivided one-half of the property vested in Eliza Gates at the death of the testatrix and the remainder in the other half of the property has vested in Oakley H. Warne and Ernest E. Warne, and it is immaterial whether it vested at the death of the testatrix or the death of the life tenants.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*