ARTHUR L. PERRY, ADM'R *vs.* CLARA LESLIE ET ALS.

Cumberland.    Opinion October 14, 1924.

*Legacies, where the testatrix bequeath to A "twenty shares of the capital stock" of a certain corporation, to B "ten shares of the capital stock" of the same corporation, and to C "twenty shares of the capital stock" of the same corporation, are general, not specific, and may be satisfied by the delivery of the specified number of shares of the capital stock of the corporation within twenty months after final allowance of the will without any dividends, either in cash or stock, declared by the company and received by the administrator or executor before such delivery.*

In this case in the distribution of the residue of the estate, the defendants, daughters of John Pease, will take one fourth thereof to be equally divided between them; the defendants, daughters of Laura Livers, who died in the lifetime of the testatrix, will take one fourth to be equally divided between them, and the defendants, Clara Leslie and Anna Perry, will take each one fourth thereof.

On report.   A bill in equity seeking the construction and interpretation of the will of Ellen J. Whitmore, deceased, late of Brunswick in Cumberland County.   At the conclusion of the evidence, by agreement of the parties, the cause was reported to the Law Court upon the amended bills and answers thereto, replication and proof, for the determination of facts and rights of the parties upon the pleadings and so much of the testimony as is legally admissible. Bill sustained.    Decree in accordance with opinion.

The case is fully stated in the opinion.

*Andrews, Nelson & Gardiner,* for complainants.

*McLean, Fogg & Southard, Clement F. Robinson, Charles M. Davenport, Philip G. Clifford, Joseph E. F. Connolly, Charles H. Blatchford, Clinion C. Palmer and Ralph E. Jenny,* for respondents.

SITTING:   CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

MORRILL, J.   Ellen J. Whitmore of Brunswick died on the eleventh day of October, 1922, leaving a will written by herself, dated

June 30, 1909. The plaintiff as administrator with the will annexed of her estate brings this bill for instructions in the performance of his duties. Two questions are presented.

FIRST. The testatrix owned at the time of her death one hundred seventy-one shares of the capital stock of the Sagamore Manufacturing Company, a Massachusetts corporation; her will contains inter alia the following provisions:

"I give and bequeath as follows:

"To American Board Commissioners for Foreign Missions, incorporated in Massachusetts, Three thousand dollars and twenty shares in the capital stock of the Sagamore Manufacturing Company of Fall River, Massachusetts.

"To the Congregational Union for Church Building Ten shares of the capital stock of said Sagamore Manufacturing Company and Five Hundred in money.

"To Chadbourne Whitmore of Superior Wisconsin, son of Samuel Warren Whitmore in trust for the said Samuel W. Whitmore his father twenty shares in capital stock of Sagamore Manufacturing Company."

After the death of the testatrix the Sagamore Manufacturing Company declared a stock dividend of sixty-six and two thirds per cent., or two additional shares for every three shares outstanding, and from time to time certain cash dividends, which plaintiff has received and now holds. As to the disposition of both classes of dividends he asks the instructions of the court.

The legatees, American Board of Commissioners for Foreign Missions, the Congregational Church Building Society and Chadbourne Whitmore claim to be entitled to their proportionate shares of both classes of dividends.

It is to be noticed that the holdings of the testatrix exceeded the total number of shares thus disposed of, including forty shares bequeathed to the Medical School of Maine, which has since been dissolved; and there is no language directly identifying the shares bequeathed. The legacies must, therefore, be regard as general, not specific, under the ruling in *Palmer* v. *Estate of Palmer*, 106 Maine, 25.

The essential nature of stock dividends has recently been considered by this court in cases arising between life tenants and remainder men (*Thatcher* v. *Thatcher*, 117 Maine, 331, *Harris* v. *Moses*, 117 Maine, 391), and by the Supreme Court of the United

States in cases involving the taxation of such dividends as income (*Towne* v. *Eisner*, 245 U. S., 418, *Eisner* v. *Macomber*, 252 U. S., 189), with the result that in the first class of cases such dividends have been declared not to be income to which a life tenant will be entitled as against a remainder man, and in the latter class, not be taxable income. It is urged that the reasoning upon which the results in those cases are based applies equally here.

Counsel, therefore, submit, with forcible argument, that the legacies to the American Board of Commissioners for Foreign Missions, the Congregational Union for Church Building, and Chadbourne Whitmore, Trustee, are the shares in the corporate property of Sagamore Manufacturing Company which on October 11, 1922 were represented by twenty, ten, and twenty shares respectively of its capital stock, and are now represented by thirty-three and one third, sixteen and two thirds, and thirty-three and one third shares respectively.

In ascertaining the rights of legatees the intention of the testatrix as collected from the whole will and all the papers which make up the testamentary act, (*Tibbetts* v. *Curtis*, 116 Maine, 336, 339) examined in the light of the attendant facts which may be supposed to have been in the mind of the testatrix, (*Palmer* v. *Estate of Palmer*, supra,) must govern. If the intention of the testatrix cannot be so ascertained, the court must be governed by such rules of law as have been established to meet the circumstances of the case. *Thatcher* v. *Thatcher*, supra.

The will affords no indication of the intention of the testatrix as to either class of dividends; it was made more than thirteen years before her death; nothing appears from which we may infer that she knew anything about stock dividends, or that the possibility of such distribution ever occurred to her: unless the possibility of such dividends was present in her mind she cannot be said to have had any intention in regard thereto. We must, therefore, look to the rules of law governing the case, and ascertain what will satisfy the calls of the will as to these legacies; and here the distinction between specific and general legacies becomes important and, we think, controlling.

Specific legacies are considered as separated from the general estate, and appropriated at the time of the testator's death, and carry with them all accessions by way of dividends or interest accruing

after the death unless the will otherwise directs; although the executor for his own protection may withhold payment or delivery of the legacy to provide against debts. But general legacies are payable out of the general assets of the estate and in case of a gift of stock may be satisfied by the delivery to the legatee of any stock answering the description. *Palmer* v. *Estate of Palmer*, supra. 2 Woerner on Administration, 2d Ed. Sections 444, 458. *Tifft* v. *Porter*, 8 N. Y., 516. *Sponsler's Appeal*, 107 Pa. St., 95, 100. So where a testator bequeathed to one daughter "four thousand dollars in United States government bonds, to be delivered to her, if alive, at my death; if not, to her children," and to another daughter "one thousand dollars in United States Government bonds," and left at his death United States bonds to the amount of five thousand dollars, the legatees contended that they were entitled to receive the respective amounts of bonds due them under the will from those left by the testator. The court held, however, that the requirements of the will would be satisfied by the delivery to the legatees of any bonds of the United States in the amounts specified. *Evans* v. *Hunter*, 86 Iowa, 413.

These authorities are decisive of this case. We hold that the legacies under consideration will be satisfied by the delivery of the specified number of shares of the capital stock of Sagamore Manufacturing Company within twenty months after final allowance of the will (Public Laws, 1919, Chapter 40) without the dividends, either in cash or stock, declared by the company and received by the administrator before such delivery.

If the plaintiff transfers and delivers the certificates of stock before said twenty months expire, the legatees will be entitled to the dividends, stock and cash, payable after such transfer; and in any event they will be entitled to the dividends payable after said twenty months.

SECOND. The residuary clause of said will is as follows: "I give, bequeath and devise all the rest, residue and remainder of my estate to Clara Leslie Anna Perry—Laura Livers and daughters of John Pease."

Clara Leslie and Anna Perry are sisters of each other, and daughters of an uncle by blood of the testatrix; Laura Livers and Susan Pease were sisters of each other, and daughters of an aunt by blood of the testatrix; Laura Livers died May 3, 1920 and it is conceded that

her two daughters, Caroline Van Huysen and Susan Eastman, succeed to her interest in the residuary estate; Susan Pease was the wife of John Pease mentioned in the residuary clause; they had children, Charles, Fannie, Minnie, Sarah and Bessie, who are legatees under an earlier clause of the will, as follows: "To Charles, Fannie, Minnie, Sarah and Bessie children of John Pease and his late wife Susan C. Pease Thirty-five hundred dollars to be equally divided between them."

Clara Leslie, Anna Perry and the two daughters of Laura Livers contend that the residuary personal estate shall be distributed in four equal parts, of which the daughters of Mrs. Livers will have one, and the daughters of John and Susan Pease another; the four daughters of John and Susan Pease, viz.: Fannie M. Pease, Minnie P. Pease, Sarah P. Pease and Bessie M. (Pease) Bowers, claim that said estate shall be divided into seven equal parts of which they shall each receive one seventh, Clara Leslie and Anna Perry each one seventh, and the daughters of Laura Livers, a seventh to be divided between them. It is conceded that the share of Clara Leslie, whatever it may be, has been assigned to one Marion G. L. Harmon, who is made a party to the bill, and that the real estate constituting a part of the residuary estate will be held in common and undivided in the same proportions in which the residuary personal estate shall be distributed.

The executor asks for the instructions of the court as to the distribution of the residuary estate.

Here, again, we are to seek the intention of the testatrix as expressed in the will.

Counsel for Fannie M. Pease, Minnie P. Pease, Sarah P. Pease, and Bessie M. (Pease) Bowers contends that when a devise or bequest is made to a person and the children of another person, or to a person described as standing in a certain relation to the testator and the children of another person standing in the same relation, the beneficiaries take per capita, not per stirpes, as stated in 2 Jarman on Wills, 5th Am. Ed., star Page 194, (Randolph & Talcott's, 5th Am. Ed., Page 756). That such a canon of interpretation exists is conceded by counsel for the other beneficiaries under the residuary clause. It seems to have been based upon the judgment of Lord Chancellor King in *Blackler* v. *Webb*, 2 P. Wms., 383 (*Roome* v. *Counter*, 6 N. J. L., 111. *Dollander* v. *Dhaemers*, 297 Ill., 274, 130

N. E., 705), and in some jurisdictions has now become an established canon of interpretation; but like all other rules of construction it yields to the intention of the testator as determined from the language of the will; and it requires but slight evidence, "a very faint glimpse," of a different intention on the part of the testator to lead to a distribution per stirpes. *Balcom* v. *Haynes et al.*, 14 Allen, 204. If we have strict regard to the language of the will before us and to the facts admitted, the rule referred to is not applicable because (1) the word "children" as distinguished from ."heirs," is not used, and (2) the gift is not to the children of John Pease, of whom there were five by his wife, Sarah, but the daughters, four in number, are selected as the recipients of the bounty of the testatrix. The diligence of counsel has not found for us any case in which the language of the will and the facts relating to the beneficiaries are the same as here, nor have we found such a case. In the case of *Kimbro* v. *Johnston et al.*, 15 Lea (Tenn.), 78, the language of the will,—"Mary's daughters,"—"James' daughters"—is very similar to the language of the will before us, and both "Mary" and "James" had sons as well as daughters; but the testatrix directed that the notes bequeathed should be "equally divided." This phrase, wanting in the present will, is very generally regarded as a determining factor as to the manner of distribution. See *Doherty* v. *Grady*, 105 Maine, 36, 44. *Balcom* v. *Haynes*, supra. *Allen* v. *Boardman*, 193 Mass., 286. The Tennessee Court felt obliged to follow the English rule "in the absence of anything to show a different intent," in accordance with their decisions.

In cases involving the interpretation of wills, citations of adjudicated cases cannot afford much aid; while they can afford helpful analogies, they are uncertain guides. No two wills are ever precisely alike. No two testators are situated precisely the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light of the construction given by a court of justice to the will of another. This court has often so remarked; *Fogler* v. *Titcomb*, 92 Maine, 184, 188; *Crosby* v. *Cornforth*, 112 Maine, 109, 112; *Tibbetts* v. *Curtis*, 116 Maine, 336, 340; and the remark is peculiarly applicable, here, to the consideration of a will involving the distribution of an estate per stirpes or per capita, upon which subject the cases are a multitude, confusing when an attempt is made to classify them, and in many cases contradictory.

Nor can this bequest to the "daughters of John Pease" in a strict legal sense be said to be a gift to a class, which is a body of persons which may fluctuate in number. 1 Redfield on Wills, 2d Ed., 340, star Pages 385, 386. "A number of persons are popularly said to form a class when they can be designated by some general name as 'children,' 'grandchildren,' 'nephews'; but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." 1 Jarman on Wills. Randolph & Talcott's, 5th Amer., Ed., 534, star Page 269. Here there is no uncertainty as to the number of the designated legatees; their names are stated in the will; their relationship to the testatrix was through their mother, Susan C. Pease, who died in 1884; there is no reason for supposing that the testatrix had in mind other persons than the daughters of John and Susan C. Pease; it does not appear that she knew of the second marriage of John Pease, or had any personal acquaintance with him. We are of the opinion that it could not have been the intention of the testatrix that only the daughters of John Pease living at her death should take, and that in the event of the death of one or more in the lifetime of the testatrix, their representatives would take nothing. See *Fairbank's Appeal,* 104 Maine, 337. *McClench* v. *Waldron,* 204 Mass., 554, 557.

It is well, however, to bear in mind the popular conception of the term "class" in interpreting this will drawn by the testatrix herself; the word is not infrequently used by the authorities in the same sense, or in the sense that the persons indicated collectively represent their parent. See *Doherty* v. *Grady,* 105 Maine, 36, 45. *Palmer* v. *Jones,* 299 Ill., 263; 132 N. E., 567. *Fissel's Appeal,* 27 Pa. St., 55, 57. *Ferrer et al.* v. *Pyne,* 81 N. Y., 281, 284.

Whether in the absence of any attendant facts and conditions, thus confined to the language of the devise itself, we should follow the English rule or adopt a construction which conforms to the statute of distribution, as if the word "heirs" was used (*Doherty* v. *Grady,* supra), we need not decide; the authorities appear to be at variance.

Upon the record as presented we think that it is not difficult to determine the development of her will in the mind of the testatrix, and thus to ascertain her intentions.

In addition to the facts in the bill before stated, admitted by the answers, we have before us three documents; the first is a former will of the testatrix, not in her handwriting, dated February 8, 1901, found in her residence before her death; the second is an office copy of the first, not very material here, found among the papers of the late Weston Thompson, Esq., who was in his lifetime the attorney of .the testatrix; the third document is in the handwriting of the testatrix, signed by her, and dated June 29, 1909. These documents do not contain any declarations by the testatrix as to her intentions in relation to the present issue; such declarations are conceded to be inadmissible; but they are evidence of conditions which were before, and present in the mind of, the testatrix when she wrote the last will, and as such are admissible as legitimately tending to show the probabilities of her intentions. *Tapley* v. *Douglass,* 113 Maine, 392, 394.

A comparison of the will of 1901 with the document dated June 29, 1909 and with the will before us dated June 30, 1909 shows beyond question that when Miss Whitmore undertook to write her will she had before her the will of 1901. The document dated June 29, 1909 was evidently begun as a will; she carefully copied the will of 1901 to and including the legacy to the First Parish Church in Brunswick, changing only the reference to the pastor in accordance with the fact; from that point the writing becomes a memorandum of the provisions of the contemplated will, noted down as she went through the earlier will, leaving some legacies unchanged, changing others, and omitting some. The will of 1901 contained inter alia these provisions:

"To Fannie, Minnie, Sarah, and Bessie, children of John Pease and his late wife, Susan C. Pease, two thousand four hundred dollars to be divided among them in equal shares: also all my funds and deposits in Portland Savings Bank in Portland, Maine to be divided among them as aforesaid.

"To Charles Pease, son of said John and Susan, four hundred dollars."

The residuary estate she bequeathed and devised "to Clara E. Leslie, Anna J. Perry and Laura S. Livers to have and to hold in fee."

In the writing of June 29, 1909 she did not dispose of the residue, and omitted all legacies to the Pease children and to some other legatees, including the Congregational Union for Church Building. When she later had decided upon the final terms of her will, she gave to the five Pease children thirty-five hundred dollars to be shared equally, and made additional provision for the daughters by including them as beneficiaries in the residue.

Giving consideration to the relationship which these parties and the other residuary legatees bore to the testatrix as disclosed by the record, we cannot doubt that the testatrix had in mind that Susan C. Pease was related to her in the same degree as the other residuary legatees, and that by including her daughters collectively, as her representatives, the residue would be divided among three persons and the daughters of a fourth, of the same degree of kindred to her, and likewise divided between two collateral branches of her family, and that no distinction should be made between those branches. Miss Whitmore probably knew nothing about the technical distinction between distribution per stirpes and per capita, or as to taking by "a class"; but the natural thought in her mind was that the daughters collectively should represent their mother, that the mother was of the same degree of kindred to her as the other residuary legatees, and that there should be no discrimination between them; she thus in her own mind classified the daughters of John Pease. *Fissel's Appeal*, supra. *Ferrer et al.* v. *Pyne*, supra. We know of no rule of law which will prevent us from giving effect to this thought and intention of the testatrix. We, therefore, hold that in the distribution of the residue of the estate the defendants, Fannie M. Pease, Minnie P. Pease, Sarah P. Pease, and Bessie M. (Pease) Bowers, will take one fourth thereof to be equally divided between them, that the defendants, Caroline Van Huysen and Susan Eastman, will take one fourth thereof to be equally divided between them, and that the defendants, Clara Leslie and Anna Perry will each take one fourth thereof; the share of said Clara Leslie in the personal estate will be paid to the defendant, Marion G. L. Harmon. The following cases, upon various aspects of the case, are in harmony with this conclusion, although in none is the language of the will, and the facts, precisely the same as in the instant case. *McClench* v. *Waldron*, 204 Mass., 554. *Dollander* v. *Dhaemers*, 297 Ill., 274, 130 N. E., 705. *Ferrer et al.* v. *Pyne et al.*, 81 N. Y., 281. *Fissel's Appeal*, 27 Pa. St.,

55.  *White* v. *Holland*, 92 Ga., 216.  *Geery et als.* v. *Skelding et als.*, 62 Conn., 499.  *Lyon et als.* v. *Acker*, 33 Conn., 222.  *Fraser* v. *Dillon*, 78 Ga., 474.

It is conceded that the defendant, Congregational Church Building Society, is the organization referred to in said will as the ''Congregational Union for Church Building,'' and is entitled to the legacy thus bequeathed.

The plaintiff may charge his taxable costs, and counsel fees allowed at one hundred dollars against the estate in his hands.

> *Bill sustained.*
> *Decree in accordance with*
> *opinion.*